**A. L. MULLINS, Jr. as Trustee in Hayes Electric, Inc.**

v.

**NOLAND COMPANY.**

**No. B74–778A.**

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 23, 1975.

James G. Hampton, Marietta, Ga., for Hayes Elec.

Swift, Currie, McGhee & Hiers, Atlanta, Ga., for trustee.

John Tye Ferguson, Atlanta, Ga., for Noland Co.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is an action brought pursuant to § 60 of the Bankruptcy Act, 11 U.S.C. § 96, to recover as voidable preferences two payments totaling $11,424.09, which were paid to defendant within four months of bankruptcy. These payments were effected by means of joint checks drawn on the account of Joe N. Guy Co., Inc. and made payable to "Hayes Electric, Inc. [Bankrupt herein] and Noland Company." On September 9, 1974, the Bankruptcy Judge entered an order ruling in favor of the trustee and defendant appealed. In this appeal, defendant argued that the joint checks were not preferential transfers since they were payments made in satisfaction of an "equitable assignment" entitling defendant to the proceeds of a contract between Joe N. Guy Co., Inc. and the Bankrupt. Alternatively, defendant argued that the payments were not preferential because they were made in satisfaction of an independent obligation arising between Joe N. Guy Co., Inc. and Noland Co. predicated on Noland Co.'s forbearance in filing and subsequently perfecting an "inchoate" materialman's lien. In an order dated March 25, 1975, this court concluded that the facts in evidence did not support appellant's equitable assignment theory, noting in addition that appellant's failure to invoke the available procedures provided by Article 9 of the U.C.C., Ga.Code Ann. § 109A–9–101, would render the purported assignment voidable by the trustee under § 60 in any event.[1] On the other hand, in light

---

1. § 60(a)(6) provides that "[t]he recognition of equitable liens where available means of perfecting legal liens have not been employed is declared to be contrary to the policy of this section." Thus, the law developed under "the older forms of security devices [including an equitable lien or assignment] in relation to § 60 of the Bankruptcy Act will be obsolete in those jurisdictions in which the U.C.C. is in effect." 3 *Collier on Bankruptcy* ¶ 60.51A at 1046 (J. Moore ed. 1974). In discussing this matter, this court previously ruled as follows:

In Georgia, applicable provisions of the U.C.C. provide a basis for perfecting legal security interests in accounts or contract rights. *See* Ga.Code Ann. § 109A–9–101, *et seq.* . . . [A]ppellant has not attempted to show that it should be considered to be the holder of a security interest valid under Article 9 of the U.C.C.; and, in any event, the facts indicate otherwise. In Georgia, absent a signed security agreement, a security interest is not enforceable against either the debtor or third parties. Ga.Code Ann. § 109A–9–203(1)(b); *McDonald v. Peoples Automobile Loan & Finance Corp.,* 115 Ga. App. 483, 154 S.E.2d 886 (1967). Unless the provisions of § 9–203(1)(b) are complied with, a purported assignment of contract rights is completely unenforceable, "and cannot be made so on the theory of equitable mortgage or the like." *McDonald v. Peoples Automobile Loan & Finance Corp.,* supra at 487, 154 S.E.2d 886 (quoting Official Comment to § 9–203). Furthermore, an unenforceable security agreement is of course unperfected, *see id.,* subordinate to an interest obtained by a subsequent judgment lien creditor, *see* Ga.Code Ann. § 109A–9–301, and therefore subordinate to the interest of the trustee in bankruptcy. *See* § 60(a)(1)–(3); Ga.Code Ann. § 109A–9–301(3).

*Mullins v. Noland Co.,* Bankruptcy Action No. B–74–778A (N.D.Ga. March 25, 1975).

of the absence of any findings and conclusions regarding appellant's "independent obligation" or inchoate lien theory, the court remanded the action to the Bankruptcy Judge for further findings.

Following remand, the Bankruptcy Judge once again ruled for the Trustee, concluding that Georgia law does not recognize inchoate liens, as such, and concluding also that the Georgia statutes regarding materialman's liens, Ga.Code Ann. § 67–2001 *et seq.* do not impose a duty or independent obligation on a general contractor to satisfy lien rights held by a materialman. In addition, the Bankruptcy Judge made a potentially controlling factual finding, concluding that all the material in issue was delivered more than 90 days before the first joint check payment[2] and that as a result any inchoate lien rights previously held by Noland Co. had expired. Defendant Noland Co. has once again appealed, arguing that the Bankruptcy Judge misconstrued the Georgia law in

this area and arguing also that the above-mentioned factual finding is not supported by the evidence and hence is clearly erroneous. As a result of this latter contention, some review of the evidence is warranted; however, as discussed more fully below, this court has concluded that this possible factual error is not determinative of the merits of the appeal.

■ Much of the relevant factual evidence is clear. Joe N. Guy Co., Inc. (hereinafter Guy), drawer of the joint checks in issue, was general contractor on a construction project located at Century Center, DeKalb County, Georgia. Guy contracted with Hayes Electric, Inc. (hereinafter the Bankrupt) for the performance of certain electrical work on the project, and the Bankrupt contracted in turn with Noland Co., among others, for the materials needed to perform the work. These materials were furnished on open account commencing in February 1973 and ending in the Fall, 1973.[3]

2. In the order appealed from, the Bankruptcy Judge found that "defendant furnished materials to bankrupt on open account as late as September 1, 1973 . . . ." The first joint check in issue, in the amount of $6,796.09 was dated December 17, 1973, and the second joint check in issue in the amount of $4,628.00 was dated March 18, 1974. Thus both checks were paid more than 90 days after September 1, 1973. Of course, the undisputed finding that materials were furnished "as late as" September 1, 1973 does not preclude a finding that materials were also furnished after that date. As noted below, the evidence would tend to support such a finding.

3. The evidence concerning the last dates of delivery of material for the Century Center project is unclear; however, when asked about his estimate of the duration of Noland Co.'s lien rights, Mr. C. E. Heinold, credit manager for Noland Co., testified as follows: "I would say, if we shipped in October, possibly January, but some time in December, anyway." Thereafter, counsel for Appellant and Mr. Heinold discussed certain invoices, admitted into evidence as defendant's exhibit six, as follows:

Q. Just one other bunch of documents I'd like to get you to identify. I have these marked as Defendant's Exhibit 6. I wonder if you would identify what they are.
A. Well, this is an invoice mailed on December the 15th, going to Century Center

for a balance. It went into a light fixture. On November the 27th we billed an invoice for $6.66, *which was picked up by Dave's workmen on November the 27th.* This was posted in the miscellaneous account.
Q. You mean that was a credit sale for $6.66?
A. This was a sale to Dave Hayes for $6.66.
Q. Was the sale in November?
A. Right.
Here is an invoice billed on October the 16th, covering ten poles—I guess they're light poles. Yeah, ten of these went out in the parking lot, with bolts and tin plates to fasten them on. . . . Here's another one billed on October 15th covering some GE equipment for $83.43. Here's one billed on September 29th for $276.87, covering 2000 feet of wire . . . . Here's an invoice on September the 10th covering some steel plates and receptacles for $17.99, picked up by Dave's men over our counter. (emphasis added).

Of course, the billing dates of these invoices are not, in most cases, the actual delivery dates of the material purchased; however, the above testimony, together with the exhibits and certain testimony of the Bankrupt would not be inconsistent with a finding that material for the Century Center job was delivered after September 1, 1973, and possibly as late as November 27, 1973.

The total bill for this material exceeded $12,000.00; however, this amount was reduced by certain credits and a payment or payments by the Bankrupt. At some point during the continuing business relationship between Noland Co. and the Bankrupt, Noland Co. became concerned over the Bankrupt's slowness in payments on the outstanding debt. As a result Mr. C. E. Heinold, credit manager for Noland Co., contacted Guy regarding payment for the material in question. Mr. Heinold testified that he was aware of his statutory lien rights at that time, but failed to file a formal lien in light of a general policy of settling such matters by contacting general contractors directly. Mr. Heinold testified that when accounts become delinquent he approaches the general contractors directly "because we feel that if they want to protect themselves, then we want to protect the general contractors, too, *to avoid filing liens.*" (emphasis added). Although the evidence does not reveal a formal agreement between Guy and Noland Co. relative to satisfaction of Noland Co.'s claim for materials, the evidence does show that on October 10, 1973, Mr. Heinold sent a letter to Guy requesting that payment for the materials in issue be made by a joint check to Noland Co. and the Bankrupt. This letter, coupled with actual payment by Guy of the amount in question, supports appellant's contention that these payments were made in satisfaction of either an express or implied understanding between Guy and Noland Co. to the effect that Noland Co. would not pursue its lien rights if payment for the material in question would be made by Guy. In fact, Mr. Heinold, when asked why he refrained from enforcing lien rights on the job in question, testified as follows:

> Well, I knew Joe N. Guy and his reputation. I felt that this letter would be honored by him, which he told me it would. He told me that he felt that he had sufficient funds to cover it without any problem, and on that basis we did not file a lien. We also could have filed a bond claim against the job.

Thus, there is clear testimony in the record that Noland Co. declined to exercise its lien rights in complete reliance on its understanding with Guy that those rights would effectively be discharged or satisfied by payment of the amount due. As a result, this court has concluded that the subsequent payments from Guy to Noland Co. by means of the joint checks in issue did not constitute preferential payments subject to the provisions of § 60 of the Bankruptcy Act. *See, e. g., Bel Marin Driwall, Inc. v. Grover*, 470 F.2d 932 (9th Cir. 1972); *Keenan Pipe & Supply Co. v. Shields*, 241 F.2d 486 (9th Cir. 1956); *Greenblatt v. Utley*, 240 F.2d 243 (9th Cir. 1956); *Jackson v. Flohr*, 227 F.2d 607 (9th Cir. 1955), *cert. denied*, 350 U.S. 947, 76 S.Ct. 322, 100 L.Ed. 826 (1956).

■ As noted above, the Bankruptcy Judge concluded that the Georgia courts do not recognize the inchoate lien concept. On the other hand, review of the Bankruptcy Judge's opinion indicates that he relied on cases dealing with the perfection and enforceability of liens; and ·this court agrees that an inchoate lien may not be enforced absent compliance with the express statutory prerequisites provided by Georgia law. Ga. Code Ann. § 67–2001 et seq. *See Carter-Moss Lumber Co. v. Short*, 66 Ga.App. 330, 334, 18 S.E.2d 61 (1941). The instant case does not present questions of the enforceability of an inchoate lien; and if it did, this court would not hesitate to rule that the lien could not be enforced because of noncompliance with Georgia law. The question here is not whether the lien itself is enforceable, but whether the existence of the inchoate or unperfected lien, coupled with appellant's forbearance from perfecting that lien in light of the joint check arrangement with Guy, protects the payments made pursuant to that arrangement from attack by the Trustee as voidable preferences. The Bankruptcy Judge's conclusions with respect to the enforceability of liens, while correct, are thus irrelevant to the determination of the issue on appeal.

■ Under Georgia law, a material-man's lien rights attach following the first delivery of materials to be used on a job and expire 90 days following the date of the last delivery. Ga.Code Ann. § 67–2001(2). *See Downtowner of Atlanta, Inc. v. Dunham-Bush, Inc.,* 120 Ga. App. 342, 170 S.E.2d 590 (1969). Assuming the last item delivered is a lienable item, then the subsequently perfected lien relates back to cover all items delivered, including those items delivered more than 90 days prior to filing the lien. *See id. See also Southwire Co. v. Metal Equipment Co.,* 129 Ga.App. 49, 198 S.E.2d 687 (1973). During the period preceding the expiration of 90 days following the last delivery, the material-man's lien rights are inchoate or unperfected, *see Carter-Moss Lumber Co. v. Short, supra;* however, even these inchoate rights take precedence over general creditors of the bankrupt contractor and hence the Trustee. *See Cutler-Hammer, Inc. v. Wayne,* 101 F.2d 823 (5th Cir.), *cert. denied,* 307 U.S. 635, 59 S.Ct. 1031, 83 L.Ed. 1517 (1939). In the *Wayne* case, the owner of the property potentially subject to a lien sought to procure a release of that lien by paying the funds in question to the court.[4] The materialmen-claimants, creditors of the bankrupt, claimed the funds pursuant to their unperfected, "inchoate" lien rights; however, the district court ruled that the fund became part of the general assets of the bankrupt free of liens since all steps required to perfect the lien had not been accomplished. On Appeal, the United States Court of Appeals for the Fifth Circuit reversed, ruling as follows:

> Bankruptcy does not discharge valid liens any more when, though inchoate and in the process of completion, they are in good standing when bankruptcy comes . . . . When it supervenes, it does not take from laborers and materialmen funds devoted to their claims, to appropriate them to the general creditors, merely because some

step in the procedure, which there is still time to take, has not been taken. *Id.* at 825. Although this language is somewhat broad and inapplicable in considering lien rights asserted vis a vis the actual bankrupt, *City of New Orleans v. Harrell,* 134 F.2d 399, 400, n.6 (5th Cir. 1943), it nevertheless supports the proposition that the supervening bankruptcy of a subcontractor would not preclude a materialman from enforcing lien rights against third parties. *Id.* It follows that payments from an owner or contractor in satisfaction of those rights should not be set aside as voidable preferences.

■ Of course, the Bankruptcy Judge's overemphasis on the question of enforceability of inchoate liens and possible erroneous factual conclusion concerning the date of the last delivery of material need not compel reversal of the ruling appealed from . if the Bankruptcy Judge correctly concluded that "there is no independent obligation or affirmative duty in Georgia to discharge unperfected lien rights between materialmen and general contractors." As noted in this court's March 25, 1975 remand order, the existence of such an obligation may be a critical factor in determining the issue presented in this appeal. *See Keenan Pipe & Supply Co. v. Shields, supra.* If indeed a general contractor has an independent obligation to discharge unperfected, inchoate liens, payments made from a contractor to a materialman to discharge such liens would not be considered preferences, even if made by means of joint checks payable to the materialman and the subcontractor. *See id.; Jackson v. Flohr, supra.* Assuming arguendo that the Georgia courts recognize such an obligation, and assuming that the Bankruptcy Judge erred in concluding that material deliveries were completed by September 1, 1973, then the December check would not be considered as a preferential payment "by

---

**4.** In Georgia, an interpleader action may be an owner's most viable remedy when faced with multiple lien claims by several subcontractors and materialmen. *See, e. g., Tuck v. Moss Manufacturing Co.,* 127 Ga. 729, 733, 56 S.E. 1001 (1907).

indirection" from the Bankrupt.[5] On the other hand, in light of the fact that this court has concluded that the check payments were made pursuant to an express or implied undertaking, initiated while appellant clearly possessed inchoate lien rights and consummated by the December and March check payments,[6] the question of whether or not either or both of the checks discharged an inchoate lien is not a determinative factor. Similarly, this court need not determine whether or not the "obligation" or "undertaking" between Guy and Noland Co. was sufficiently definite, supported by consideration, and formalized to be enforced as a contractual right;[7] for on review of the arguments of the parties, the court has determined that the undertaking or understanding between Guy and Noland Co. was sufficiently definite, when coupled with Guy's independent obligation regarding satisfaction of lien rights, to compel a finding that the subsequent check payments were not payments which had the effect of depleting the assets of the Bankrupt to the detriment of the Bankrupt's other creditors.

In the first instance, it should be noted that the Bankruptcy Judge's reliance on the lack of privity between Noland Co. and Guy and the cases dealing with this issue is misplaced. See, e. g., The Jordan Co. v. Adkins, 105 Ga.App. 157, 123 S.E.2d 731 (1961). The issue sub judice is not whether a materialman may enforce his contractual rights with the subcontractor in an action against the owner or the general contractor; nor is the issue here whether a materialman may enforce his in rem lien rights against the owner's property. See Chambers Lumber Co., Inc. v. Hagan, 118 Ga.App. 392, 163 S.E.2d 847 (1968). In this case, there are no lien rights to enforce since they expired 90 days following the last delivery of material to the Bankrupt and because they were discharged by payment. Thus, the question presented by this appeal is whether or not the payments in issue constitute voidable preferences, not whether those payments could have been compelled by an independent action brought by the materialman against the general contractor, the owner, or the trustee.

In fact, review of one of the cases cited by Appellee actually supports the proposition that the general contractor owes an independent obligation to materialmen to ensure that their claims (and liens) are satisfied. See Scott v. Williams, 111 Ga.App. 735, 143 S.E.2d 16 (1965). In this case, the plaintiff general contractor sought to foreclose a lien against the owner; however, the court ruled that "[t]he contractor cannot recover a judgment against the owner in the face of undisputed evidence that he has not paid a materialman who has foreclosed a lien on the owner's premises in an amount greater than that remaining due by the owner to the contractor." Id. at 736–77, 143 S.E.2d at 18. In reaching this conclusion, the court discussed the purpose of the Georgia mate-

---

5. Of course, under this theory, the March payment, since outside the 90 day period for perfecting Appellant's inchoate lien rights, would be considered to be a preferential payment. See 4 Collier, supra ¶ 67.22 at 266 n.15.

6. The issue throughout this appeal has been whether or not the payments from Guy to Noland Co. by means of the December and March joint checks may be set aside as voidable preferences. Appellant also refers to a third check, dated in March and made payable directly to Noland Co.; however the record does not reveal whether such a check was ever received, endorsed, or deposited by Noland Co. as a credit against the Century Center account. Although such a check might constitute additional evidence that Guy assumed an

"independent obligation" to satisfy Appellant's claim for materials, the evidence is simply too unclear to warrant such a finding at this time.

7. As pointed out by Appellant, forbearance from filing a lien has been recognized as sufficient consideration to support a contract in Georgia. Smith v. Folsom, 190 Ga. 460, 472, 9 S.E.2d 824 (1940). Assuming arguendo that enforcement of such an agreement might initially be barred by the Statute of Frauds, Ga. Code Ann. § 20–401(2); cf. Wooten v. Wilcox, Stilson & Co., 87 Ga. 474, 13 S.E. 595 (1891), the agreement here would be considered fully performed and executed on payment by means of the joint checks. See id. See also Bluthenthal & Bickart v. Moore, 106 Ga. 424, 36 S.E. 689 (1899).

rialman's lien in some detail, quoting from the opinion of the Court of Appeals for the Fifth Circuit in *Cutler-Hammer v. Wayne, supra* as follows:

> " 'The purpose of the lien statutes in every state is . . . to give the furnisher of labor and material a claim upon the owner, to compel him at his peril to *withhold final payment* until he has received assurance from the contractor that he has paid all material and labor claims, which are or which *may be perfected* into liens.' "

*Scott v. Williams, supra* at 736, 143 S.E.2d at 18 (emphasis added in part). As a result, noting that the property owner is liable to a "materialman who has properly prosecuted his lien in an amount up to the contract price", *id.*, the court concluded that the owner may withhold final payment on the contract so long as subcontractors and materialmen remain unpaid. In that regard, the court classified the owner's potential liabilities to subcontractors and materialmen under the lien laws as "credits to the owner against the contractor *whose primary obligation it is to see that the laborers and materialmen employed by him are paid . . . ." Id.* (emphasis added).

 Although the existence of inchoate or perfected lien rights may provide a defense for the owner to an action by the contractor to enforce his rights to payment under the prime contract, the fact that the prime contract has been paid does not necessarily provide a defense for the owner against an action by a materialman to enforce a lien. *See Short & Paulk Supply Co., Inc. v. Dykes,* 120 Ga.App. 639, 171 S.E.2d 782 (1969). As noted in that case, the owner may procure an affidavit from the general contractor to the effect that all costs of labor and material have been paid, *see* Ga.Code Ann. § 67–2001(2); however, the owner nevertheless has the ultimate burden of showing the proper disbursement of funds. In considering whether the defendant owner had fulfilled this burden, the *Dykes* court discussed the sufficiency of an affidavit submitted by the general contract, stating the following:

> [The general contractor] is an interested witness. If he received the full contract price for the job he became a *trustee of the funds for the purpose of disbursing them properly to those who held valid claims for labor and materials,* and his failure faithfully to do so would render him criminally liable. [Citations omitted].

*Id.* at 647–48, 171 S.E.2d at 788. Of course, the *Dykes* court did not consider the question of whether the general contractor's position of "trustee" of the funds paid under the contract for the benefit of subcontractors and materialmen would make him civilly liable to them for nonpayment of such funds; however, it is clear, under both the *Dykes* and the *Scott v. Williams* cases, that the Georgia courts recognize a substantial obligation on the part of general contractors to ensure that all subcontractors and their materialmen are paid.

 It is clear, on review of the Georgia cases, that prior to payment, and notwithstanding the intervening bankruptcy of the subcontractor, a materialman may enforce his inchoate lien rights against the owner pursuant to Georgia statutory law. *Cutler-Hammer v. Wayne, supra.* Similarly, it is likewise clear under Georgia law that the owner may withhold payment of the contract price to the general contractor so long as the materialman's rights remain unsatisfied. *Scott v. Williams, supra.* The existence of such inchoate rights, when coupled with the general contractor's obligations, predicated in part upon potential criminal, if not civil liability, *Short & Paulk Supply Co., Inc. v. Dykes, supra,* compel the finding that a general contractor may seek to expedite his own payment and foreclose any necessity on the part of materialmen to enforce their lien rights by agreeing to discharge those rights by direct payment. The evidence in the instant case supports the existence of such an agreement, which was consummated by subsequent pay-

ments, *see* note 7, *supra*; therefore, this court has concluded that those payments should not be considered as payments by indirection from the assets of the Bankrupt, to the detriment of the Bankrupt's other creditors. On the contrary, the joint check arrangement in this case enabled all the parties, including the Bankrupt, to obtain expeditious settlement of their rights and obligations without resort to protracted action under the Georgia lien laws. Any other result would compel potential lienors to forego a reasonable commercial practice in favor of insisting on enforcement of their lien rights, thereby creating an unnecessary and expensive impediment to the prompt settlement of construction contracts. Certainly, in the present circumstances, allowing recovery of the payments as voidable preferences would defeat the reasonable commercial expectations of the appellant herein and provide a wholly fortuitous windfall to the Trustee. As a result, this court has concluded that the payments in issue here were not voidable preferences subject to the provisions of § 60 of the Bankruptcy Act.

Accordingly, for the reasons hereinabove expressed, the order of the Bankruptcy Judge entering judgment for the Trustee is reversed and set aside.

It is so ordered.