**In re BAGWELL COATINGS, INC., Debtor.**

**FIDELITY AND DEPOSIT COMPANY OF MARYLAND, Plaintiff,**

v.

**BAGWELL COATINGS, INC., and Fidelity National Bank of Baton Rouge, Defendants.**

**Bankruptcy No. 83–00348.**
**Adv. No. 83–0251.**

United States Bankruptcy Court, M.D. Louisiana.

Sept. 30, 1983.

Joseph R. Raggio, Taylor, Raggio & Sutherland, Baton Rouge, La., for Bagwell Coatings.

Eugene R. Preaus and Brent B. Barriere, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Fidelity and Deposit Co. of Maryland.

David S. Rubin, Kantrow, Spaht, Weaver & Blitzer, Baton Rouge, La., for Fidelity Nat. Bank of Baton Rouge.

## STATEMENT OF THE CASE AND FINDINGS OF FACT

A. LEON HEBERT, Bankruptcy Judge.

Bagwell Coatings, Inc. (hereinafter referred to as "the debtor") filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code on June 3, 1983, and remained in possession of its assets.

Previously, the debtor had entered into a subcontract with Target Industrial, Inc. (hereinafter referred to as "Target") for the performance of certain work and the furnishing of certain materials on the job on which the debtor was the principal contractor.

On December 31, 1982, Fidelity and Deposit Company of Maryland (hereinafter referred to as "F & D"), acting at the request of the debtor, executed a subcontract labor and material bond and a subcontract performance bond which obligated F & D to serve as the debtor's surety for the payment of labor, supply and material expenses incurred by the debtor in the performance of the subcontract between it and Target. The subcontract bond obligated F & D to serve as the debtor's surety for the performance of the subcontract. A copy of that bond was attached to the original complaint in this case as Exhibit "B".

In order to get F & D to serve as a surety for the debtor's performance of the subcontract, the debtor executed an agreement of indemnity and assignment dated August 28, 1981, by the terms of which the debtor assigned to F & D all amounts due to the debtor for the performance of the subcontract, the title to all equipment used by the debtor in the performance of that subcontract, and "[a]ny and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds..." The assignment allegedly became effective upon the execution of the subcontract, but the debtor would not be required to release funds or equipment to F & D until such time as the debtor defaulted on either the performance of the subcontract or the payment of labor, supply or material expenses incurred in the performance of the subcontract. A copy of the assignment is attached to the complaint as Exhibit "C".

F & D alleges that in early June 1983 the debtor defaulted in the payment for material used in the performance of the subcontract.

Meanwhile, the debtor had filed Chapter 11 proceedings in the Middle District of Louisiana on June 3, 1983. F & D was not made aware of the default until after the filing of the Chapter 11 proceedings.

F & D claims, by virtue of the assignment and F & D's subrogation to Target's rights, that the debtor surrendered to F & D, upon default in either the performance of the bonded job or in the payment for labor, supply or material expenses incurred in the performance of the bonded job, all legal and equitable interest in the amounts due to the debtor under the subcontract (retainage held by the owner pending the completion and acceptance of the job). F & D contends that such retainage never became a part of the estate of the debtor which was subject to the automatic stay under 11 U.S.C. § 362. In short, F & D

claims the ownership of the retainage under the various documents referred to.

The controversy is heightened by virtue of the fact that in 1979 Fidelity National Bank of Baton Rouge took an assignment on all accounts receivable of the debtor, due or to become due.

It is unquestioned that the debts due to Target by the debtor arose prior to June 3, 1983. It is also unquestioned that the retainage, though claimed under the assignment and subrogation to F & D, was not in the possession of F & D on June 3, 1983.

The complaint in this matter seeks modification of the automatic stay or for adequate protection. The prayer of the complaint recites that the court should declare that the debtor has no interest in the subcontract proceeds and that Fidelity National Bank has no interest in the subcontract proceeds or an interest of lesser priority than that of F & D. Fidelity National Bank was made a defendant in this adversary proceeding and it, of course, relies upon the 1979 assignment of accounts receivable as the basis for its right to receive the proceeds of the retainage in question, which amounts to the sum of some $50,000.

As of the date of the trial of this matter, F & D had made no payments whatsoever under this performance bond.

Upon the completion of the presentation of the case by the plaintiff, counsel for Fidelity National Bank moved orally that judgment be rendered in favor of the defendants and dismissing the complaint based on the argument that any payments made to claimants would be prepetition payments and, thus, preferences, and, additionally, for the reason that neither Target nor the New Orleans Sewerage and Water Board had been made parties to this suit.

The pretrial memorandum filed by counsel for F & D cited case law which would seem to support the contention of the ownership of the retainage by F & D as surety (*National Shawmut Bank of Boston v. New Amsterdam Casualty Co.,* 411 F.2d 843 (1st Cir.1969). The Court found in that case that the surety was not an assignee but instead it had assumed the position of owner and, with that role, took title to the contract proceeds. However, a reading of that case reveals that the author of the opinion concluded that "prior to default the contractor had a right to assign progress payments and had the bank received payment it could not (absent circumstances amounting to fraud) have been divested by the surety" (*Shawmut,* 411 F.2d at p. 848). This case can be further distinguished in that the suretyship arose prior to the assignment to the Bank, which is not the situation in the present case.

The notice of default in the instant case came after the filing of the Chapter 11. This factor becomes significant in light of two very recent cases which appear to be fatal to F & D's position, *United States v. Whiting Pools, Inc.,* —— U.S. ——, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), and *Georgia Pacific Corporation v. Sigma Service Corporation,* 712 F.2d 962 (5th Cir.1983). These cases are the latest Supreme Court and Fifth Circuit decisions regarding the nature of a debtor's interest in property in which another entity also has an interest. The Court, upon the completion of the trial of this matter, asked counsel to brief and distinguish, if possible, the *Sigma* case and the *Whiting Pools* case.

The *Sigma* case arose in this Court, and the Court held in the case that retainage payments represented by checks payable to the debtor and to the suppliers of goods and services had not been made and that, upon the filing of the Chapter 11 proceedings, the amounts represented by those checks became property of the estate.

In *Whiting Pools* the United States Supreme Court determined that property of the debtor which had been validly seized prior to the debtor's filing of a petition for reorganization was properly property of the debtor's estate. Justice Blackman, noting that the scope of the estate under 11 U.S.C. § 541(a)(1) is broad and

"... is intended to include in the estate any property made available to the estate by other provisions of the Bankruptcy Code."

*United States v. Whiting Pools, Inc.,* ——— U.S. ———, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Further, the Court stated that in this context,

"[a]ny other interpretation of § 542(a) would deprive the bankruptcy estate of the assets and property essential to its rehabilitation effort and thereby would frustrate the congressional purpose behind the reorganization provisions."

*United States v. Whiting Pools, Inc.,* ——— U.S. ———, 103 S.Ct. 2309, 2315, 76 L.Ed.2d 515 (1983).

It can be maintained that Justice Blackman intended this statement regarding the philosophy underlying reorganization under the Code, to be equally applicable to other sections of the Code and not limited solely to § 542(a).

The Court reached its determination in this case predicated not only on the broad scope of property of the estate, as evidenced in the *Sigma* and *Whiting Pools* decisions, but, also, on the statement of counsel, the testimony of the witnesses, and examination of the proofs of claim filed into the record as Exhibits "3", "4", and "5", respectively, from the trial held on September 6, 1983.

The Court finds that F & D had no notice of any default of the debtor until after the filing of the debtor's petition in bankruptcy, and, that Mississippi Mining & Marketing Company did not file a proof of claim until July 13, 1983, J–R Equipment Corporation filed on July 14, 1983, and Ronald R. Crais Corporation on August 16, 1983. The proofs of claim filed by these three companies reflect that each of these claimants were, in fact, supplying the debtor with materials on the job until one or two days prior to the filing of the bankruptcy. Clearly, payment on these most recent deliveries was not in default at the time of the debtor's filing for reorganization.

Additionally, the Court is struck by a statement made by plaintiff's counsel in response to the query of this Court concerning how subrogation can arise before payment has been made on the debt. Counsel replied that subrogation arose because the *claim had been made* and that this was the critical element that triggers the law process. If such is the case, and the court believes it to be so, then subrogation did not occur and ownership of the retainage was not transferred until F & D had received notice of the default in the form of proofs of claim. Prior to such time F & D's liability was merely potential, and, as such, the extent of which could not be determined with any certainty.

## CONCLUSIONS OF LAW

Notice of default not having occurred prior to the filing of the Chapter 11, it is the holding of the Court that the retainage in the sum of some $50,000 rightfully fell into the estate of the debtor and that whatever rights F & D may have to these funds must be asserted against the debtor and could not be satisfied by proceedings for a declaratory judgment.

The Bankruptcy Court, sitting as a court of equity, cannot overlook the unenviable position that the prior assignee of accounts receivable (Fidelity National Bank) finds itself in. There is no way that the assignee of those accounts receivable could ascertain from any public record that its rights were the subject of a surety bond which transferred ownership to such funds, as these were to the surety.

That statement, however, is not the principal reason for the result in this case. The cases and the distinction in the *Sigma* case make it clear, as far as this Court is concerned, that the proceeds of retainage had not been delivered to and were not the property of F & D at the time of the filing of the Chapter 11 case and, consequently, they are properly part of the debtor's estate.

Judgment will be entered accordingly.