### In re SUN BELT ELECTRICAL CONSTRUCTORS, INC., Debtor.

### Bankruptcy No. A85–04736–WHD.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Jan. 16, 1986.

Paul M. Hoffman, Lawrenceville, Ga., for M & M Elec. Supply, Inc.

Stephen V. Kern, McLain & Merritt, P.C., Atlanta, Ga., for Flagler Co.

Edwin A. Tate II, Atlanta, Ga., for Joe N. Guy Co., Inc.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

This case is presently before the Court on two motions. The first is a motion filed on October 8, 1985 by the debtor in possession, Sun Belt Electrical Constructors, Inc. ("Sun Belt"), to reject three executory contracts ("Guy Contracts") involving Sun Belt, M & M Electric Supply, Inc. ("M & M"), and the Joe N. Guy Company, Inc. ("Guy"). The second motion is a motion filed on November 22, 1985 by M & M to enforce a contract ("Flagler Contract") involving Sun Belt, M & M, and the Flagler Company ("Flagler"). M & M filed a response to Sun Belt's motion to reject the Guy Contracts on October 18, 1985. This Court held a hearing on both motions on November 27, 1985, at which time the motions were taken under advisement. Letter briefs were submitted by Sun Belt on December 3, 1985 and December 5, 1985, by Flagler on December 4, 1985 and December 6, 1985, and by M & M on December 4, 1985.

The Court must decide the following issues: (1) whether the Flagler Contract and the Guy Contracts are executory; (2) whether the Flagler Contract should be enforced; and (3) whether Sun Belt's rejection of the Guy Contracts should be approved.

## FINDINGS OF FACT

1. Sun Belt performed work as a construction contractor for Guy and for Flagler. In the course of this work, Sun Belt purchased electrical materials from M & M.

2. Pursuant to the Guy Contracts, Guy agreed to make payments for construction work by checks jointly payable to both Sun Belt and M & M. In return for this agree-

Jay E. Loeb, Gershon, Olim, Katz & Loeb, Atlanta, Ga., for Sun Belt Elec. Constructors, Inc.

ment, M & M agreed not to pursue its lien rights.

3. The Flagler Contract constitutes a similar agreement between Sun Belt, Flagler and M & M.

4. Guy is currently indebted to Sun Belt for construction work performed prior to the filing of Sun Belt's bankruptcy petition on September 5, 1985. Under the terms of the Guy Contracts, Guy is to pay for this work with checks jointly payable to Sun Belt and M & M. In connection with the construction work giving rise to these obligations, Sun Belt became indebted to M & M for purchases of electrical materials.

5. Similarly, Flagler is indebted to Sun Belt for pre-petition construction work, and Sun Belt is indebted to M & M for purchases in connection with this work. Under the terms of the Flagler Contract, Flagler is to pay for this work with checks jointly payable to Sun Belt and M & M.

6. On October 3, 1985, counsel for Sun Belt informed counsel for M & M that Sun Belt rejects the Guy Contracts pursuant to 11 U.S.C. § 365.

7. Flagler's subcontract agreement ("Flagler's Subcontract Agreement") with Sun Belt with respect to a project known as Northridge Phase IV provides that Flagler has the right to retain from progress payments owed to Sun Belt the amount of any claim or lien asserted against Flagler by other parties arising out of Sun Belt's performance under the contract.

## CONCLUSIONS OF LAW

■ Before addressing the enumerated issues, the Court notes a procedural deficiency in M & M's motion to enforce the Flagler Contract. M & M's motion apparently requests injunctive or equitable relief or, at least, a declaratory judgment. Under Bankruptcy Rule 7001, such relief may only be obtained in an adversary proceeding. For that reason, the Court will deny M & M's motion without prejudice.

The Court observes, however, that the Flagler Contract and the Guy Contracts are virtually identical. The Court further observes that in ruling on Sun Belt's motion to reject the Guy Contracts, the Court will examine the parties' rights under the Guy Contracts. As a practical matter, the legal conclusions reached with respect to the Guy Contracts will be equally applicable to the Flagler Contract.

In order to avoid confusion with respect to this application, the Court will discuss the parties' rights under the Flagler Contract, when the Court discusses the parties' rights under the Guy Contracts.

■ Since the Guy Contracts and the Flagler Contract are essentially identical, the Court will consider the executory nature of both contracts in the following single discussion. The appropriate test for determining whether a contract is executory appears to be the one proposed by Professor Countryman. Under that test, an executory contract is one in which the "obligations of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete the performance would constitute a material breach excusing the performance of the other." *Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc. (In re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1045 (4th Cir.1985).

A failure on the part of Flagler or Guy to perform the obligation of issuing checks jointly payable to Sun Belt and M & M would clearly constitute a material breach. M & M's duty to refrain from pursuing lien rights appears to be a continuing duty. Because some or all of those rights have expired, the Court will examine Sun Belt's obligations.

■ Sun Belt's obligations under the contracts include a duty to endorse the jointly payable checks over to M & M to the extent that payment is due for electrical materials purchased in connection with the construction work giving rise to the checks. The existence of this duty is apparent from the purposes of the contracts. The contracts were entered into by Sun Belt, M & M, Guy, and Flagler. The parties obviously intended that M & M would receive

payment out of the checks in return for not filing materialman's liens. Interpreting the contracts in light of these purposes, it is apparent that the contracts impose on Sun Belt this duty of endorsing the checks over to M & M. Given this unperformed obligation on the part of Sun Belt, the Court concludes that the contracts are executory.

■ Having found that the Flagler Contract is executory, the Court will determine whether it should be enforced. It appears that an executory contract is unenforceable against a debtor in possession who has not yet assumed the contract. Bordewieck, *The Postpetition, Pre-Rejection, Pre-Assumption Status of an Executory Contract*, 59 Am.Bankr.L.J. 197, 199 (1985). While this principle prevents the enforcement of the Flagler Contract against Sun Belt, it should not affect the enforcement of the contract against Flagler. In order to determine the effect of the Flagler Contract in light of this apparent conflict, the Court will examine the parties' rights under it.

The Flagler Contract is affected by Flagler's Subcontract Agreement. Under that agreement, Flagler may deduct any portion of the money otherwise due to Sun Belt to satisfy claims asserted against Flagler (or the premises upon which the work was performed) when those claims arise out of Sun Belt's performance of the agreement. It follows that the amount owed by Flagler to Sun Belt should be reduced by the amount claimed by M & M. Amounts retained by the payor under such contract provisions are not property of the debtor's estate. *Shaw Industries, Inc. v. Gill (In re Flooring Concepts, Inc.)*, 37 B.R. 957, 961–962 (Bankr. 9th Cir.1984); *Great American Insurance Co. v. Universal Builders, Inc. (In re Universal Builders, Inc.)*, 53 B.R. 183, 186 (Bankr.M.D.Tenn. 1985). The Court therefore concludes that to the extent of M & M's claims against the money otherwise owed by Flagler to Sun Belt, the payment of money to Sun Belt and M & M as joint payees pursuant to the Flagler Contract should not increase the size of Sun Belt's estate.

This conclusion is supported by the following discussion relating to the rejection of the Guy Contracts. In this discussion, the Court will analyze the parties' rights under the Guy Contracts. Since the Flagler Contract and the Guy Contracts are essentially identical, the Court's conclusions will apply to both contracts.

■ A debtor in possession's decision to reject an executory contract is reviewable by the courts under the business judgment rule. *Lubrizol*, 756 F.2d at 1046; *Turbowind, Inc. v. Post Street Management, Inc. (In re Turbowind, Inc.)*, 42 B.R. 579, 584 (Bankr.S.D.Cal.1984). Under this rule, the question is "whether rejection would benefit the general unsecured creditors." *Turbowind*, 42 B.R. at 584. In order to make this decision, the Court must consider the effect of rejecting the Guy Contracts.

"Even though [11 U.S.C.] § 365(g) treats rejection as a breach, the legislative history of § 365(g) makes clear that the purpose of the provision is to provide only a damages remedy for the non-bankrupt party." *Lubrizol*, 756 F.2d at 1048. Accordingly, specific performance is not an appropriate damages remedy. *Id.* In the case presently under consideration, it follows that Sun Belt's rejection of the contracts should not result in an order of specific performance.

■ This analysis ignores Guy's obligations to M & M. Pursuant to the contracts, M & M refrained from filing liens, based on its reliance on Guy's performance under the contracts. For that reason, the Court finds that Guy is still bound by the contracts to perform its part of the bargain.

In accordance with this apparently conflicting resolution of the parties' duties, the Court will determine the effect of rejection of the contracts on the unsecured creditors' ability to recover from the estate. More specifically, the Court must decide whether the issuance of the joint checks payable to Sun Belt and M & M pursuant to the contracts will increase Sun Belt's estate.

The broad definition of property of the estate set forth in 11 U.S.C. § 541 includes property subject to turnover under 11 U.S.C. § 542(d) pursuant to a debt "that is matured, payable on demand, or payable on order." 11 U.S.C. § 542; *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 205, 103 S.Ct. 2309, 2313, 76 L.Ed.2d 515 (1983). Applying this broad definition of property of the estate, the Court in *Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962 (5th Cir.1983), ordered that checks jointly payable to a construction company debtor and its supplier be turned over to the debtor. The Court found that the debtor had a legal interest in the funds, *id.* at 968, and that state law did not impose a constructive trust on those funds, *id.* at 970–971. The Court also found that the joint check agreement between the debtor and the payor did not impose a constructive trust on the funds. *Id.* at 971.

The Court in *Georgia Pacific* acknowledged that where the joint check agreement includes an agreement by the suppliers to refrain from filing liens, the funds represented by the check do not become property of the estate to the extent that they are owed to the suppliers. *Id.* at 972 n. 9. One of the cases cited for this proposition is *Mullins v. Noland Co.*, 406 F.Supp. 206 (N.D.Ga.1975). In *Mullins,* the District Court found that a materialman's forbearance from perfecting his lien rights against the payor in return for a joint check agreement was sufficient to keep the funds represented by a joint check out of the estate. *Id.* at 214. The Court then held that the transfer of those funds to the materialman was not a preferential transfer. *Id.* This rationale is supported by a considerable body of case law. *Pearlman v. Reliance Insurance Co.*, 371 U.S. 132, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962); *Keenan Pipe & Supply Co. v. Shields*, 241 F.2d 486, 491 (9th Cir.1956); *Shaw*, 37 B.R. at 961; *Nelson v. Nelson (In re Bailey)*, 17 B.R. 50, 52 (Bankr.W.D.Ark.1981). Based on these decisions, this Court finds that Sun Belt's estate will not include funds which become payable to Sun Belt as co-payee on joint checks written pursuant to the Guy Contracts to the extent that those funds are owed to M & M for purchases of electrical materials in connection with the construction work paid for by the joint checks.

Sun Belt urges the Court to apply the reasoning set forth in several cases which arguably support a finding that Sun Belt's estate would include the proceeds of the joint checks. After considering these cases, the Court finds that each case is distinguishable based on the insufficiency of the agreements made between the materialmen and the payors. In the case of *Fidelity and Deposit Co. of Maryland v. Bagwell Coatings, Inc. (In re Bagwell Coatings, Inc.)*, 34 B.R. 193 (Bankr.M.D.La.1983), an attempted assignment of funds was conditioned on a default which did not occur prior to the filing of bankruptcy. In *Great American,* 53 B.R. at 186, an unperfected assignment to a surety was preempted by the trustee pursuant to 11 U.S.C. § 544. In the case of *In re D & B Electric, Inc.*, 4 B.R. 263, 267 (Bankr.W.D.Ky.1980), the Court found that no equitable lien existed in favor of a materialman who agreed to forbear from filing a lien when the materialman's right to file such a lien had expired before he made the agreement.

This Court's holding should not be construed to be a finding that funds transferred by a payor to a construction contractor/debtor are always held in trust for materialmen and, therefore, can never be property of the estate. Such a finding was made by the Court in *Selby v. Ford Motor Co.*, 590 F.2d 642 (6th Cir.1979). The *Selby* Court's holding was based on a finding that under the Michigan Builders Trust Fund Act, a trust arises automatically in favor of materialmen. *Id.* at 647.

In Georgia, the relevant statute provides by its terms for a lien rather than a trust. O.C.G.A. § 44-14-361. The Court in *In re D & B,* 4 B.R. at 268–270, held that a lien statute in favor of materialmen creates a trust fund that keeps funds owed to materialmen out of a debtor's estate. Oth-

er courts, however, do not infer a constructive trust merely from statutes creating liens in favor of materialmen. *Georgia Pacific,* 712 F.2d at 969–972; *Dickenson v. Hacker Brothers, Inc. (In re Lafollette Sheet Metal, Inc.),* 35 B.R. 634, 638 (Bankr. E.D.Tenn.1983). Although language in *Mullins,* 406 F.Supp. at 213, might indicate the existence of a trust relationship under state law, it appears to this Court that the Georgia Courts have not explicitly found a constructive trust in favor of materialmen based merely on the Georgia lien statute. *See United Parcel Service, Inc. v. Weben Industries,* 610 F.Supp. 13, 15 (N.D.Tex. 1985). For that reason, this Court declines to hold that a constructive trust automatically exists as a result of the Georgia lien statute in O.C.G.A. § 44–14–361.

■ Arguably, Sun Belt's status as a co-payee in checks drawn pursuant to the contracts would give Sun Belt the right to have such checks turned over to it pursuant to § 542(b). The Court in *Georgia Pacific* held that a bare "legal" interest in property was sufficient to require a creditor to turn over the property subject to any equitable claims held by other creditors. *Georgia Pacific,* 712 F.2d at 968. The question for this Court is whether turnover of Sun Belt's legal interest will be of value to Sun Belt's creditors. The *Georgia Pacific* Court notes that if the debtor has no equitable interest in the joint check, then his "sole permissible administrative act with regard thereto would be to pay over or endorse the sums due to the beneficial owners of the property." *Id.; see Vineyard v. McKenzie (In re Quality Holstein Leasing),* 752 F.2d 1009, 1012 (5th Cir. 1985); *First National Bank in Sioux City, Iowa v. Dahlquist (In re Dahlquist),* 34 B.R. 476, 484 (Bankr.D.S.D.1983). The *Dahlquist* Court suggests that when the debtor in possession has only a legal interest in property, the trustee should abandon that legal interest under 11 U.S.C. § 554 or the Court should order the trustee to turn it over to the equitable owners. *In re Dahlquist,* 34 B.R. at 484. This Court, therefore, concludes that rejection of the Guy Contracts by Sun Belt will not benefit Sun Belt's creditors.

Since neither Sun Belt nor its creditors will benefit from rejecting the Guy Contracts, the Court will not approve the rejection. In the case of the Flagler Contract, the Court finds that Flagler's Subcontract Agreement, as well as the analysis undertaken with respect to the Guy Contracts, prevent funds represented by joint checks written pursuant to the Flagler Contract from becoming property of Sun Belt's estate to the extent of claims asserted by M & M based on materials purchased in connection with the construction work paid for by the joint check. Because Sun Belt's creditors have no interest in the funds and Sun Belt's only permissible acts with respect to the funds would be to endorse the checks over to M & M or abandon the checks, the Court finds that the Flagler Contract should be enforced. Because this is not an adversary proceeding, the Court will not at this time order that Guy and Flagler issue joint checks or that Sun Belt endorse the checks over to M & M.

Accordingly, it is ORDERED that: (1) Sun Belt's motion to reject executory contracts is DENIED; and (2) M & M's motion to enforce the Flagler Contract is DENIED without prejudice.