In the Matter of CONTROL ELECTRIC, INC., Debtor.

John W. RAGSDALE, Jr., Trustee, Plaintiff,

v.

M & M ELECTRIC SUPPLY, INC., Defendant.

Bankruptcy No. A85–02607–ADK. Adv. No. 85–0676A.

United States Bankruptcy Court, N.D. Georgia, Atlanta Division.

Oct. 31, 1986.

William R. Patterson, Jr., Ragsdale, Beals, Hooper & Seigler, Atlanta, Ga., for plaintiff.

Paul Hoffman, Lawrenceville, Ga., for defendant.

## MEMORANDUM OF OPINION AND ORDER

A.D. KAHN, Bankruptcy Judge.

Plaintiff-Trustee filed the above-styled adversary complaint to recover two alleged preferential transfers pursuant to 11 U.S.C. § 547. It is before the Court on Plaintiff-Trustee's Motion for Summary Judgment. The Court finds this matter to constitute a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). The following facts are not in dispute.

### II.

In mid–1984, Debtor entered into subcontract agreements with both Tolar Construction Company [hereinafter "Tolar"] and Southern Construction and Design [hereinafter "Southern"] whereby the Debtor would perform electrical work for Tolar's "Technology Center" project and Southern's "Pizza House" project. Subsequent to these agreements, the Debtor entered into an agreement with Defendant, M & M Electric Supply, Inc. whereby Defendant would supply the materials for the Debt-or's work on the Technology Center and Pizza House projects. Defendant set up separate accounts relating to the projects for which the Debtor was purchasing its materials. *See* Deposition of Leonard Thomas Langley [hereinafter "Langley"] at 4.

In late January of 1985, Defendant put the Debtor on a "cash on delivery" basis. Deposition of Langley at 23. Although Defendant was owed a large sum of money overall, nothing or very little was owed on the Technology Center and Pizza House accounts. There is conflicting evidence on the exact balances given by Langley, who was in charge of Defendant's accounts. In his deposition, Langley states that the balance for the Technology Center account was –0– for the months ending in January, February, March, and April 1985. Deposition of Langley at 5, 6, 8, 9. However, in his affidavit attached to Defendant's Response to Plaintiff's Motion for Summary Judgment, Langley states that the balance owed by the Debtor at the time relevant hereto [on the date Defendant received the joint check proceeds—discussed infra.] was $646.21. Affidavit of Langley at ¶ 6. In his deposition, Langley stated that, on January 31, 1985, the Pizza House project account had a balance of $1,452.84. Deposition of Langley at 6. He also stated that on February 28, 1985 and April 30, 1985 the account balances were $1,467.37 and $1,496.86, respectively. *Id.* at 6–7, 9. In his Affidavit, he states that the balance on the Pizza House project account was $2,707.15 at the time relevant hereto. Affidavit of Langley at ¶ 6. As will be discussed below, the Court finds these discrepancies to have no material bearing on the outcome of this proceeding.

Sometime in the Spring of 1985, the Debtor and Defendant entered into separate joint check agreements with Tolar and Southern whereby any further payments due to the Debtor would be made by a joint check payable to both the Debtor and Defendant. See Exhibits 1 and 5 to Deposition of Langley. On or about April 26, 1985, a joint check from Tolar was issued

in the amount of $5,811.45, and the Defendant received the entire proceeds from this check. Deposition of Langley at 14. Sometime between April 3 and May 20, 1985, a joint check was issued from Southern in the amount of $6,403.00, and the Defendant received the entire proceeds from this check. Deposition of Langley at 22. See also Defendant's Response to Plaintiff's Statement of Undisputed Facts at ¶ 3.

The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on May 20, 1985.

### III.

Plaintiff-Trustee seeks to set aside as a preference the transfer of sums due the Debtor from Tolar and Southern which were paid over to Defendant via two joint checks. Section 547 of the Bankruptcy Code provides that

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

\* \* \* \* \* \*

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

The Court finds that Plaintiff-Trustee has established each of the five elements necessary for a preferential transfer. Payments by both joint checks were to a creditor [the Defendant herein] for or on account of an antecedent debt. Defendant has failed to dispute the rebuttable presumption found in § 547(f) that the Debtor was insolvent on and during the 90 days immediately preceding the date of filing of the bankruptcy petition. Both transfers occurred within the 90 days before the Debtor filed its petition. Finally, based upon the schedules filed by the Debtor, it is clear that the Defendant received more than it would have been entitled to under a Chapter 7 distribution.

Subsection (c) of § 547 provides many exceptions to the avoidance powers granted to a trustee under subsection (b). The Defendant contends that the transfers in question fall within the exceptions provided for in § 547(c)(1) and (c)(2). Section 547(c)(1) excepts from the trustee's avoiding powers of preferential transfers a transfer "to the extent that such transfer was—(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for *new value* given to the debtor; and (B) in fact a substantially contemporaneous exchange." (emphasis added).

■ Defendant argues that "new value" was given to the Debtor in exchange for the joint check agreement in the form of forebearance of Defendant "in filing a lien in the amount of $2,707.15 against the 'Pizza House' project and in the amount of $646.21 against the 'Technology Center' project and forebearance of filing suit against debtor for the full amount of the debtor's indebtedness...." Defendant's Response to Plaintiff's Motion for Summary Judgment at 1. In support of its contention that forebearance constitutes "new value" within the meaning of § 547, the Defendant relies upon the case of *Mullins v. Noland Co.*, 406 F.Supp. 206 (N.D.Ga. 1975) in which the Court held that, under similar facts, a joint check agreement between a debtor-subcontractor, a supplier, and a general contractor when coupled with the general contractor's independent obligation regarding satisfaction in lien rights, would not constitute preferential transfers because "the subsequent check

payments were not payments which had the effect of depleting the assets of the Bankrupt to the detriment of the Bankrupt's other creditors." 406 F.Supp. at 212.

*Mullins v. Noland Co.* was decided under the Bankruptcy Act of 1898, and the Court did not have to consider the new Bankruptcy Code's definition of "new value" contained in § 547(a). Section 547(a)(2) provides that

> 'new value' means money or money's worth in goods, services, or new credit, or release by a transferee of property previously transferred to such transferee in a transaction that is neither void nor voidable by the debtor or the trustee under any applicable law, including proceeds of such property, but does not include an obligation substituted for an existing obligation.

The issue of whether waiver of an inchoate lien right constitutes "new value" within the meaning of § 547 was addressed in the case of *Tidwell v. Bethlehem Steel Corp. (In re Georgia Steel, Inc.)*, 56 B.R. 509 (Bankr.M.D.Ga.1985). After considering the language used by Congress in its definition of "new value" quoted above, the Court found that a waiver of inchoate lien rights does not come under the definition contained in § 547(a)(2).

It went on to discuss the ramifications of its decision.

> The Court recognizes the impact and the hardship that this decision may have on the construction industry in Georgia. *See Ballard v. Grubbs (In re Grubbs)*, 9 B.R. 499, 501 (M.D.Ga.1981). From a practical standpoint, even when a materialman receives full payment from a contractor, the materialman could be forced to file a claim of a materialman's lien within the ninety-day state statutory time limit or lose the protection of the lien laws in the event of a subsequent bankruptcy filing by the contractor. Despite this consequence, the function of this Court is to interpret the laws enacted by Congress. Congress has determined the order and priorities in the dis-

tribution of a bankrupt's estate through its enactment of the Bankruptcy Code. In this adversary proceeding, it is doubtful that Congress contemplated Defendant's situation and the resulting consequences, but it is up to Congress, not this Court to correct this result. The impact of this decision also could be changed by the state legislature, which could adopt a specific trust fund statute and thereby remove payments, such as the ones Defendant received, from preferential attack under section 547(b).

56 B.R. at 522.

Although the Court in *In re Georgia Steel, Inc., supra,* distinguished its case from that of *Mullins v. Noland Co.* on the facts including that it did not involve a joint check arrangement like the one in *Mullins,* this Court finds no reason to make such a distinction. Under the facts before the Court, there is no reason to treat a transfer by a joint check any differently than a transfer by an alternate means. Therefore, the Court declines to follow the holding of *Mullins v. Noland Co.* on the ground that it was not decided under the new Bankruptcy Code and did not have to consider Congress' definition of "new value."

█ The Defendant also argues that the transfers in question are excepted from avoidance under § 547(c)(2), which provides that the trustee may not avoid a transfer

> to the extent that such transfer was—
>
> (A) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee;
>
> (B) made in the ordinary course of business or financial affairs of the debtor and the transferee; and
>
> (C) made according to ordinary business terms.

The undisputed facts show clearly that these transfers were anything but made in the ordinary course of business. The Defendant had already put the Debtor on a C.O.D. basis. Langley stated in his deposition that George Delamater, on behalf of

the Debtor, had told him to " '[c]ollect the money as best you can. Whatever you've got to do, go collect the money.' " Deposition of Langley at 10. The Defendant further argues that the amendment in 1984 deleting the 45–day limit contained in the ordinary course of business exception somehow aids its contention that the payments by the joint checks in question were in the ordinary course of business. Under the undisputed facts, this Court cannot reach any other conclusions than that the joint check payments were made *outside* the ordinary course of business between the Debtor and the Defendant.

Therefore, the Court finds that Plaintiff is entitled to recover the entire amount of the two checks. This amount equals $12,-214.45. There being no material facts in dispute, the Court finds that Plaintiff-Trustee is entitled to summary judgment in this amount.

### ORDER

In accordance with the reasoning above, it is the Order of the Court that Plaintiff-Trustee's Motion for Summary Judgment be, and the same hereby is, GRANTED.