29023. CARTER-MOSS LUMBER COMPANY *v.* SHORT.

DECIDED DECEMBER 5, 1941.

*Tolnas & Middlebrooks,* for plaintiff.

*Green & Michael, James Barrow Jr.,* for defendant.

PER CURIAM. The sole question here presented is whether or not a judgment based on the foreclosure of a materialman's lien is exempt from the operation of the dormant judgment acts as codified in part in Code § 110-1001 as follows: "A judgment shall become dormant and shall not be enforced . . 2. Unless entry is made on the execution by an officer authorized to levy and return the same and such entry and the date thereof are entered by the clerk on the general execution docket within seven years after the issuance of the execution and its record; or 3. Unless a bona fide public effort on the part of the plaintiff in execution to enforce the execution in the courts is made at such times and periods that seven

years will not elapse between such attempts or between such an attempt and a proper entry." In the present case the levy of the execution was made on August 7, 1940. The judgment on which the execution issued was rendered on November 21, 1922, and the execution was issued on the next day and placed upon the general execution docket of the superior court of the county. So far as appears from the execution there was no levy thereof or other effort to enforce the judgment until the levy of the execution on August 7, 1940.

The plaintiff contends that the judgment sub judice was exempt from the provisions of the Code section because it merely declared and established a lien which was already in existence; that such lien was not first established by the judgment but began to exist when the material was furnished to the owner of the property. The Code, § 67-2301, provides that the lien of a materialman on real estate "shall be foreclosed, when not otherwise provided, as follows: 1. By a compliance with his contract by the person claiming the lien and recording his claim, and the commencement of suit therefor, according to the provisions and requirements of section 67-2002. 2. In declaring for such debt or claim the claimant of the lien shall set forth his lien, and the premises on which he claims it; and if the lien shall be allowed, the verdict shall set it forth, and the judgment and execution be awarded accordingly." The Code, § 67-2001, provides that "all contractors, materialmen, and persons furnishing material for the improvement of real estate . . shall each have a special lien on such real estate," etc. § 67-2002 provides how the lien specified in § 67-2001 may be made good, and states that the liens there mentioned must be "created and declared in accordance with the following provisions, and on failure of any of them the lien shall not be effective, viz.: 1. A substantial compliance by the party claiming the lien with his contract for building, repairing, or improving, or for materials or machinery furnished or set up, as set forth in said section. 2. The recording of his claim of lien within three months after the completion of the work [in the form specified]. . . 3. The commencement of an action for the recovery of the amount of his claim within twelve months from the time the same shall become due." The lien thus provided for in favor of a materialman is not absolute, but must be completed, made good, or

perfected in accordance with the provisions of the law above quoted. It is only inchoate or incipient until a judgment finally perfects it. "In 27 Cyc. 110 it is said: 'The doing of work or furnishing of materials gives merely an inchoate lien or the right to acquire a lien, and the statute prescribes the steps to be taken to perfect such lien.' Lien laws are of course to be strictly construed, and one who claims a lien must bring himself within the law. *Palin* v. *Cook,* 125 *Ga.* 442 (54 S. E. 90). The mechanic's lien, as to realty, is in derogation of common law, and is to be construed strictly and extended no further than its words plainly import. *Fox* v. *Rucker,* 30 *Ga.* 525. The failure of a mechanic or contractor to perfect his lien, as provided by statute, vitiates the lien, not only as against third persons, but, under our decisions, as against the owner himself. *Cherry* v. *North & South Railroad,* 65 *Ga.* 633, 635. To 'make good' the contractor's lien, the statutes must be strictly complied with." *Oglethorpe Savings & Trust Co.* v. *Morgan,* 149 *Ga.* 787, 792 (102 S. E. 528). See *Kwilecki* v. *Young,* 180 *Ga.* 602 (180 S. E. 137). Once established by judgment, however, the lien's efficacy relates back to the date of the completion of the contract. *Middle Georgia Lumber Co.* v. *Hunt,* 53 *Ga. App.* 578, 580 (186 S. E. 714) ; *Oglethorpe Savings & Trust Co.* v. *Morgan,* supra. It necessarily follows from the above that the judgment rendered on November 21, 1922, did not, as contended by the plaintiffs in error, merely declare or recognize a lien which was *absolute* theretofore, but that such judgment rendered perfect or made good for the first time the lien claimed by the materialman, and, accordingly, was within the statute providing that, under the circumstances of this case, such judgment would become dormant after seven years. The trial court did not err in sustaining the defendant's affidavit of illegality and in dismissing the levy.

Where a lien is created by contract, for example, as in a mortgage, and where no judgment is necessary to make good or establish such a lien, the statute as to dormant judgments does not apply. Cases dealing with that kind of a lien, such as *Butt* v. *Maddox,* 7 *Ga.* 495, cited and relied on by the plaintiff in error, are distinguishable. See *Collier* v. *Bank of Tupelo,* 190 *Ga.* 598 (10 S. E. 2d, 62).

*Judgment affirmed. Sutton and Felton, JJ., concur.*

STEPHENS, P. J., dissenting. The levy of this execution was

made on August 7, 1940. The judgment on which the execution issued was rendered on November 21, 1922, and the execution was issued on the next day and placed upon the general execution docket of the superior court of the county. So far as appears from the execution there was no levy thereof or other effort to enforce the judgment until the levy of the execution on August 7, 1940.

The Code, § 110-1001, provides: "A judgment shall become dormant and shall not be enforced. . . 2. Unless entry is made on the execution by an officer authorized to levy and return the same and such entry and date thereof are entered by the clerk on the general execution docket within seven years after the issuance of the execution and its record; or 3. Unless a bona fide public effort on the part of the plaintiff in execution to enforce the execution in the courts is made at such times and periods that seven years will not elapse between such attempts or between such an attempt and a proper entry." In the suit in which this judgment was rendered the plaintiffs prayed for a general judgment against the defendant for the purchase price of certain building materials, and also prayed for the establishment of a materialman's lien upon the property of the defendant for the balance due, and the court rendered a judgment in personam against the defendant generally and ordered that the "judgment be and the same is hereby declared, set up and established as a special lien" upon the described real estate of the defendant, being the property for the improvement of which the building materials sold by the plaintiffs to the defendant were used. It is contended by the plaintiffs that the court erred in sustaining the illegality on the ground that the judgment was dormant for the reason that the provisions of the Code, § 110-1001, are not applicable to a judgment rendered in the lien foreclosure proceedings establishing a materialman's lien on the real estate improved.

A judgment rendered upon a suit filed against the owner of certain real estate to recover the purchase price of materials bought by the defendant from the plaintiff for use in the improvement of such real estate, in so far as it may purport to be a general judgment in personam against the defendant, is dormant because of a failure on the part of the plaintiff in execution to make any effort to enforce such judgment for more than seven years after the execution was issued on the judgment. *Lindsey* v. *Porter,* 140 *Ga.*

249 (78 S. E. 848). However, a judgment rendered pursuant to the provisions of the Code, §§ 67-2002, 67-2301, for the purpose of enforcing and "making good" one of the liens specified in § 67-2001 is one in rem. The judgment involved here declared a special lien upon described real estate, which was the real estate improved by the building materials sold by the plaintiffs to the defendant. The execution issuing on the judgment, which was recorded on the general execution docket of the county, provided that the levying officer should levy the execution upon the property of the defendant generally, and "especially" upon the described real estate. The affidavit of illegality is interposed to the levy of this execution, not upon the property of the defendant in execution generally, but "especially" upon the real estate for the improvement of which the building materials sold by the plaintiffs to the defendant were used. The suit in which this judgment was rendered was instituted within twelve months from the time the purchase price of such materials became due, and it is alleged in the petition that the plaintiffs substantially complied with their contract to furnish the defendant, at the defendant's request, with such building materials, and also alleged the recording of their claim of lien, within three months after such material was furnished to the defendant, in the office of the clerk of the superior court of the county where the real estate improved is situated. See Code, § 67-2002 (1, 2, 3). Section 67-2301 provides that the lien of a materialman on real estate "shall be foreclosed, when not otherwise provided. . . By a compliance with his contract by the person claiming the lien and recording his claim, and the commencement of suit therefor, according to the provisions and requirements of section 67-2002," and that "In declaring for such debt or claim the claimant of the lien shall set forth his lien, and the premises on which he claims it; and if the lien shall be allowed the verdict shall set it forth, and the judgment and execution be awarded accordingly." The Code, § 67-2001, provides for the creation of liens in favor of one who furnishes materials for the improvement of real estate, by providing that "all . . material-men, and persons furnishing material for the improvement of real estate . . shall each have a special lien on such real estate." Where the materialman furnishes materials directly to the owner of real estate for the improvement thereof, and not to the contrac-

tor, such lien is created and established when the materials are furnished and the claim of lien recorded by the materialman within three months thereafter in the office of the clerk of the superior court of the county where the property is situated. It is only where the materials are furnished to a contractor and it is sought to establish a lien against the owner that a suit must be commenced for the recovery of the amount of the claim for the purchase price of the materials within twelve months from the time the same shall become due. *Southern Railway Co.* v. *Crawford & Slaten Co.,* 46 *Ga. App.* 424 (167 S. E. 756) ; *Buck* v. *Tifton Mfg. Co.,* 4 *Ga. App.* 695 (62 S. E. 107) ; *Robinson* v. *Reese,* 175 *Ga.* 574, 583 (165 S. E. 744). It appears therefore that where a materialman sells material for the improvement of real estate directly to the owner of the real estate, such materialman has a lien for the purchase price of the materials against the real estate for the improvement of which the materials are sold to the owner, and this lien is created by law and attaches to the real estate for the improvement of which the materials are sold upon the recordation of the claim of the materialman of his lien, within three months from the furnishing of the materials, in the office of the clerk of the superior court of the county where the real estate lies. It does not take a judgment of court to create a lien against such real estate. While a materialman, in order to foreclose such a lien, is not required to seek a personal judgment against the owner, or to commence an action against the owner for. the purchase price of the materials within twelve months from the time the purchase price became due, there is nothing to prevent the materialman from suing the owner for the purchase price and seeking a general judgment in personam against the owner therefor where the materialman at the same time complies with the provisions of the Code, § 67-2301. In such a suit the materialman can obtain a general judgment against the owner and also foreclose the lien created by law in his favor as theretofore established by him as provided in § 67-2002 (2). In such a case the general judgment would create and establish a lien against the property of the defendant generally, but the judgment foreclosing the lien would be merely declaring upon and enforcing a special lien only against the real estate of the defendant for the improvement of which the materials were sold and furnished to the defendant, which lien had, before the judgment, been created against

338

the particular real estate of the defendant by the compliance with § 67-2002 (2).

It was held as early as *Butt* v. *Maddox,* 7 *Ga.* 495, that judgments founded on the foreclosure of mortgages are not within the dormant judgment acts. "This is so because such a judgment creates no lien. The lien of a mortgage arises by the contract of the parties in executing the same; and the judgment of foreclosure, the execution issued thereon, and the levy do not aid the lien, *but only the enforcement of the same.* [Italics mine.] The judgment of foreclosure is merely an order authorizing the sale of the specific property mentioned in the mortgage, in satisfaction of the lien therein created, and, consequently, does not, like an ordinary judgment from which a lien arises, become dormant under the statute declaring that ordinary judgments shall become dormant under certain conditions." *Fowler* v. *Bank of Americus,* 114 *Ga.* 417 (40 S. E. 248). See also *Redding* v. *Anderson,* 144 *Ga.* 100 (86 S. E. 241).

In *Butt* v. *Maddox,* supra, the Supreme Court held that while the dormant judgment act referred to "all judgments," and that the judgments contemplated by it are such only as have, by law, the force and effect of a lien; and that all *judgments,* in the language of the act, means *"all of that class,"* and that "Judgments of foreclosure, have not by law, a lien." The court further held as follows: "They have not, by law, the element of lien; and as such, in the light of the mischief to be remedied by the act of 1822, are harmless. . . By statute in Georgia, generally, judgments take lien upon all the property of the defendant, from their dates. A debt by promissory note creates no lien; but when judgment is rendered thereon, the judgment is a lien from its date. This lien is a vital element of the judgment which did not belong to the contract; it began with its date, and ran with it, through time indefinite. Now, to limit the range of this lien, to certain intents and purposes, and because of certain mischief growing out of it, the legislature passed the acts of 1822 and '3. But different altogether is the nature of a judgment on the foreclosure of a mortgage. . . The property mortgaged is in the nature of a pledge, upon which a lien attaches in favor of the mortgagee; which lien is discharged by the payment of the debt secured [and except as between the parties, no lien is created by a mortgage which is not

properly recorded in the county where the mortgaged property is, as against a third person who has no knowledge of the mortgage]. If the mortgagor fails to pay according to the conditions of his contract, then, the law provides the means of enforcing payment, by a judgment against the property, and a sale by execution, issued upon it. . . It is in the nature of a contract, by which a lien is created upon property, to secure the payment of a debt, with interest and costs. The lien is part and parcel of the contract; it grows out of the act of the parties, and exists as well as anterior as subsequent to the judgment foreclosure. . . The duty of the court is to ascertain the amount due on the mortgage, and to order the sale of the property. The judgment is an ascertainment of the amount due, upon which the process issues for the sale of the property; that judgment is clothed with no lien; it is the means by which the lien created by the mortgage is fixed upon the property for the debt due; and it is the basis of a process by which that lien is enforced; that is its legal character. The lien is ascertained by reference to the mortgage; it is anterior to the judgment; it takes date from the date of mortgage. And although to some intents the mortgage may be considered as merged in the judgment, yet, for the purposes of the lien it is still vital. It is manifest, therefore, that a judgment of foreclosure differs from a general judgment in this essential particular; that no lien attaches to it. This being the case, it is not within the mischief intended to be remedied by the act of 1823. The mischief which that act was intended to remedy, grew out of the lien of judgments. The objects of the act of 1823 are declared in the title and preamble of the act of 1822, of which . . it is amendatory. The title is 'An act to amend the 26th section of the judiciary act passed 16th day of December 1799; and also, to prevent a fraudulent enforcement of dormant judgments.' The preamble, after reciting that a contrariety of decisions had taken place in the different circuits of the State, as to the time when the property of the person against whom a judgment is entered, is bound, proceeds to declare: 'And dormant judgments, by being collusively kept open, are made the instruments of fraud on innocent purchasers, and often operate oppressively on vigilant and bona fide creditors. Be it enacted, &c.' From both of which, it is clear that the mischief of the act of 1799 was this, to wit: judgments by that act, having a lien from their date, which

340

bound all the property of the defendant, then by him owned, or subsequently acquired, and which overrode the title of innocent purchasers, and also the lien of younger judgments, *were collusively kept open.* The mischief was, that these judgments were fraudulently kept open when paid; their lien continuing through an indefinite time. The object of the law was, to protect the rights of innocent purchasers and vigilant bona fide creditors. (See a case giving this construction to the acts of 1822 and '3 determined at Gainesville in September last, and not yet reported. *7 Ga. R.*) Accordingly, in pursuit of this object, the 3d section of the act of 1822, and the act of 1823, make null and void all judgments upon which no execution has issued within seven years; or if execution has issued, upon which execution no return shall be made within seven years, yet, with the right reserved in the plaintiff to renew, with a lien in the revived judgment, commencing at the time of the revival. This was the remedy. The construction which this court has given to this act is that such judgments are not void for all purposes; their lien is annulled, and also their capacity to enforce a sale; but they are valid, as the evidence of a debt which will support an action, and may be revived by scire facias. If these things are so, how can it be said that judgments on mortgages, which have no [?] lien, are within the mischiefs to be remedied by these statutes? Again, these statutes, being amendatory of the 26th section of the judiciary act of 1799, and their provisions having reference to judgments, they are clearly to be considered as relating alone to the judgments which are embraced in that section. And what kind of judgments are they? Not judgments on mortgages, for this conclusive reason, to wit: The act of 1799 relates to judgments which bind all the property of the defendant, from their date. The act of 1799, speaking of judgments, enacts that 'all the property of the party against whom such judgments shall be entered, shall be bound from the signing of the first judgment.' The legislature did not intend to embrace judgments on mortgages, in the 26th section of the act of 1799; it has never been so held by any court in Georgia. They did not intend to interfere with the law of mortgages—to enlarge their *specific* lien into a *general* lien. Neither, therefore, the old law, under which the mischief originated, nor the new laws, which prescribe the remedy, contemplated judgments upon foreclosure of mortgages."

See also *Horton* v. *Clark*, 40 *Ga.* 412, 414, where the Supreme Court, in holding that "a judgment foreclosing a mortgage is not within the acts providing for the dormancy of judgments," stated that "the case of *Butt* v. *Maddox*, 7th *Georgia*, 495, excepts mortgage fi. fas. from the act of 1823, solely on the ground that the act was intended, not to regulate the rights of the plaintiff and defendant, but the rights of third persons, and that it acted not on the judgment, but on the lien of the judgment and that, as a mortgage fi. fa. does not get its lien from the judgment, but from the mortgage, the act of 1823 did not refer to mortgage judgments and executions." In *Stiles* v. *Elliott*, 68 *Ga.* 83, 86, the Supreme Court stated that the court had previously held in *Butt* v. *Maddox*, supra, that "judgments on the foreclosure of mortgages are not within the act of 1823," the dormant judgment act, and "that ruling has been steadily adhered to and followed since." In *Whittle* v. *Tarver*, 75 *Ga.* 818, 822, the Supreme Court in a case involving the dormancy-judgment statute held as follows: "It would seem that this statute has reference to general judgments against the person and all his property, and not to a judgment *in rem*. It has been so held in respect to mortgage judgments. . . 53 *Ga.* 328. The reasoning on which that decision rests is merely that it is not the lien by judgment that binds the property, but the lien by contract, by the mortgage, the record of which was notice. The same reasoning would apply here. It is the charge upon the land in the will of General Tarver and not this decree that attaches a lien upon it. That will, its probate and admission to record, is the date of this lien, and not this decree."

In *Conway* v. *Caswell*, 121 *Ga.* 254, 258, (48 S. E. 956), where it appeared that a policy of insurance had been transferred as security for a debt, and in which it was held that the fact that the personal judgment against the debtor had become barred, did not render dormant that part of the decree which declared that the transferee of the insurance policy held a valid legal title to the policy to the extent specified, the Supreme Court said: "Where a policy of insurance was transferred as security for a debt, the fact that the remedy on the latter was barred did not destroy the debt itself, nor did it prevent the holder of the collateral from enforcing her rights thereunder." The court in the *Conway* case, stated as follows: "The same result follows, in so far as the case is affected

by the decree entered in 1890, whereby a judgment in personam was rendered against Conway, it being further decreed that, to the extent of the principal and interest, and for premiums paid or to be paid, the estate of Caswell held a valid and legal title to the policy. The proceeding was like that under the Civil Code, § 2770, whereby, in addition to the foreclosure, a personal decree may be rendered against the mortgagor. .. . Such decrees, or those similar thereto, may be resolved into their component parts. The mere money decree or judgment in personam therein (Civil Code, §§ 4861, 3761) may become barred or dormant without affecting that part of the decree which is against specific property. For, as to the judgment in personam or the money decree merely, the lien arises by operation of law, and must be enforced within the time limited by statute. But the very purpose of a specific decree is to establish and permanently fix upon the particular property some incumbrance, burden, interest, estate, or right arising from a lien, contract, obligation, or trust which antedated the decree. This part of the decree and the rights thereunder are not within the operation of the dormancy statute. . . This is manifest when it is considered that the general object of such a decree is to establish the titles of one party to a particular property."

In *Collier* v. *Bank of Tupelo,* 190 *Ga.* 598 (supra), it was held that "In a claim to land by one holding under a defendant in fi. fa., in a partition proceeding where the plaintiff in fi. fa. had obtained a decree recognizing and setting up a special lien on the portion of the land awarded to the defendant in fi. fa., on account of advances previously made by the plaintiff in fi. fa. for the protection of the joint property by paying taxes and paving assessments, the lien thus recognized and set up was not subject to the dormancy judgment statutes, which have application only to liens created by judgment, and not to judgments or decrees made for the enforcement of pre-existing liens," and that "the court erred in holding that the judgment of the plaintiff in fi. fa. had become dormant because of the failure to issue the execution within seven years from its rendition." In the opinion in that case the Supreme Court, speaking through Mr. Justice Jenkins, held as follows: "By the terms of the Code, § 37-1211, decrees in equity for the payment of money become dormant like other judgments and executions, when not enforced as provided by the Code, §§ 110-1001 et

seq. Thus, in an equity case, where the decree is 'for the payment of money,' and not for the recovery of specific property or for the performance of some act or duty . . the dormancy statutes will apply, even though the decree for the collection of an unliquidated claim in the amount determined by the decree may be in rem to the extent that it creates and establishes a special lien against particular property where no such lien previously existed. The rule just stated is not in conflict with the principle recognized in cases where there is some pre-existing title, mortgage, or other lien, which the judgment or execution does not create, but merely seeks to declare and enforce. Such a judgment in rem, entered for the purpose of enforcing a pre-existing lien, is held not to become dormant under the dormancy statutes, which relate only to liens created by the judgment. Manifestly a lien which the judgment does not create the dormancy judgment statutes should not take away." The court further stated that the judgment would not be affected by the dormancy satutes since the lien was pre-existent, and was not created by the equitable proceedings brought for its enforcement against the particular property, and that "such judgment did not create a theretofore non-existent lien, such as would become subject to the dormancy judgment statutes." The court held that where the purpose of the judgment is to *recognize, declare, and set up* the lien in order to enforce it, it is not such a judgment as is contemplated by the dormancy judgment statutes.

The plaintiffs instituted the present suit for the purpose of enforcing their lien, as well as for the purpose of obtaining a judgment against the property of the defendant generally. The cases of *Pace* v. *Shields-Geise Lumber Co.*, 147 *Ga.* 36 (92 S. E. 755), and *Philip Carey Mfg. Co.* v. *Viaduct Place*, 1 *Ga. App.* 707 (58 S. E. 274), related to liens where the material was furnished to a contractor and not to the owner of the realty. They are therefore distinguishable. From these cases it appears that there must be a judgment against the contractor before there arises a lien upon the land of the owner. *Kwilecki* v. *Young*, 180 *Ga.* 602 (supra), is not authority against the ruling here made, but is consistent therewith.

The lien in this case, which arose under contract between the plaintiffs who had furnished the materials and the defendant, the owner of the real estate upon which the plaintiffs seek to assert a

lien for the price of the materials furnished in the improvement of the real estate, arose, as provided in the Code, § 67-2002, on the completion by the plaintiffs of their contract and the recording of their claim of lien within three months afterwards in the office of the clerk of the superior court, as provided in § 67-2002 (2). The lien was then established. No judgment afterwards was required for the establishment of the lien. The judgment required to establish the lien as provided in § 67-2002(3) is required only where the material has been furnished to a contractor who has contracted with the owner of the real estate to improve the real estate. This subsection does not require, as a condition precedent to the establishment of a lien, a judgment against the owner of the real estate to whom the plaintiffs as materialmen have directly furnished the material under a contract with him. As stated for the court by Judge Powell in *Buck* v. *Tifton Mfg. Co.*, supra, the requirement of paragraph 3 "that suit to recover the claim must be commenced within twelve months, relates to the action against the contractor, and not to the subsequent proceeding against the landowner." See also *Southern Railway Co.* v. *Crawford & Slaten Co.*, 46 *Ga. App.* 424, supra, s. c. 178 *Ga.* 450 (173 S. E. 91). The foreclosure of the lien against the owner of the real estate which follows after the filing of the lien and the bringing of a suit as required in the Code, § 67-2301, and which results in a judgment against the owner of the real estate, does not establish the lien. The lien has already been established by the completion by the materialman of his contract and recording of his claim of lien within three months in the office of the clerk of the superior court. Such lien is only foreclosed, which is a different process from establishment of the lien, under the provisions of this Code section.

It follows that the judgment in this case, in so far as it sought to enforce the lien against the particular property, did not create a theretofore non-existent lien, and was not affected by the dormancy statutes. The court erred in sustaining the affidavit of illegality on this ground.