**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS, P. J., and RAY, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**October 27, 2016**

# In the Court of Appeals of Georgia

A16A1169. LANG v. BRAND-VAUGHAN LUMBER CO., INC.    DO-045

DOYLE, Chief Judge.

Brand-Vaughan Lumber Company ("BVL") sued Donna Lang, the property owner, to foreclose on a materialman's lien to recover the price of materials sold to Diamond Development Group, Inc., the contractor ("Diamond"), and used to construct Lang's home. The trial court granted summary judgment to BVL, and Lang appeals, contending that the trial court erred by ruling that (1) OCGA § 9-12-60 (a) (the "Dormancy Statute") did not bar foreclosure on the lien more than seven years after the lien was perfected, and (2) the lien could be foreclosed upon despite Lang's alleged lack of notice of the underlying judgment and lien. Because the Dormancy Statute precludes BVL's suit in this case, we reverse.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1]

The relevant facts are undisputed. In January 2006, Lang entered into a contract with Diamond to build her home. Diamond purchased building materials from BVL, and in September 2006, payment for the materials became due. Diamond failed to pay fully for the materials, and BVL filed a claim of materialman's lien on Lang's property in November 2006. Also in November 2006, BVL sent a copy of the claim of lien to Lang by certified mail. Shortly thereafter, BVL sued Diamond seeking payment for the materials, and in March 2007, BVL received a default judgment against Diamond.

In November 2014, BVL sued Lang seeking a declaration of a special lien in the amount of $14,655.65, which reflected the outstanding principal and interest on Diamond's account. Lang answered and unsuccessfully moved for judgment on the

---

[1] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

2

pleadings. Discovery ensued, and BVL moved for summary judgment, which motion the trial court granted, awarding BVL $14,655.65 against Lang[2] and declaring a special lien for that amount plus $8,305 in accrued interest plus post-judgment interest. Lang now appeals.

1. Lang contends that the trial court erred by allowing BVL to foreclose its lien because the judgment on which its validity depended was rendered unenforceable by the Dormancy Statute. We agree.

> OCGA § 44-14-361.1 (a) sets out the provisions for perfecting a [materialman's] lien. These provisions require a materialman who has substantially complied with the contract for materials to (a) file a claim of lien in the county where the property is located within [90 days] of furnishing the materials; (b) [properly] send a copy of the lien claim to the property owner; (c) commence an action against the contractor to recover the amount of the claim within [365 days from the date of filing the lien]; and (d) file a notice of the action with the superior court clerk

---

[2] We note that while a foreclosure proceeding under OCGA § 44-14-530 is an *in rem* proceeding only, and BVL's complaint only sought a special lien plus interest, the trial court awarded money damages for the principal amount against Lang. Lang has not raised this as an issue, however, and in light of our reversal, it is unnecessary to address it.

of the county where the lien was filed so that the clerk can enter information about the lawsuit in county records.[3]

The purpose of the lien statute is "to give the furnisher of . . . [building] material a claim upon the owner, to compel [the owner] at his peril to withhold final payment [to the contractor] until he has received assurance from the contractor that he has paid all material and labor claims, which are or which may be perfected into liens."[4]

There is no dispute that BVL complied with the lien statute. As of March 2, 2007, when BVL obtained a default judgment against Diamond, it had completed the statutory prerequisites to make good its lien on Lang's property.[5] Nevertheless, BVL

---

[3] *Few v. Capitol Materials*, 274 Ga. 784, 784-785 (559 SE2d 429) (2002), citing OCGA § 44-14-361.1 (a).

[4] (Punctuation omitted.) *Gignilliat v. West Lumber Co.*, 80 Ga. App. 652, 653-654 (56 SE2d 841) (1949). See also *Browning v. Gaster Lumber Co.*, 267 Ga. 72, 76 (475 SE2d 576) (1996) ("It is the owner's responsibility to see to it that the payments which he makes on the construction contract price are properly disbursed by the contractor to those having valid claims for labor and materials, and in establishing his defense to [a lien] foreclosure [action] he has the burden of showing that this was done.") (punctuation omitted).

[5] See OCGA § 44-14-361.1 (a) ("To make good the liens specified in paragraphs (1) through (8) of subsection (a) of Code Section 44-14-361, they must be created and declared in accordance with [OCGA § 44-14-361.1 (a) (1) to (4)], and on failure of any of them the lien shall not be effective or enforceable."). The requirement to file an action against the contractor "has been construed to require not only that the materialman commence a timely action against the contractor but that

4

took no further action on the default judgment against Diamond, and pursuant to the

Dormancy Statute,[6] that judgment became unenforceable at the end of seven years.

_____

he also thereafter obtain a judgment against the contractor; this is to be done before proceeding against the property." *Melton v. Pacific Southern Mtg. Trust*, 241 Ga. 589, 590 (247 SE2d 76) (1978), citing *Baldwin v. Shields*, 134 Ga. 221 (67 SE 798) (1910). See also OCGA § 44-14-361.1 (a) (4) (outlining the procedure for an initial action against the property under certain circumstances).

[6] The Dormancy Statute, OCGA § 9-12-60 (a), provides:

(a) A judgment shall become dormant and shall not be enforced:

(1) When seven years shall elapse after the rendition of the judgment before execution is issued thereon and is entered on the general execution docket of the county in which the judgment was rendered;

(2) Unless entry is made on the execution by an officer authorized to levy and return the same and the entry and the date thereof are entered by the clerk on the general execution docket within seven years after issuance of the execution and its record; or

(3) Unless a bona fide public effort on the part of the plaintiff in execution to enforce the execution in the courts is made and due written notice of such effort specifying the time of the institution of the action or proceedings, the nature thereof, the names of the parties thereto, and the name of the court in which it is pending is filed by the plaintiff in execution or his attorney at law with the clerk and is entered by the clerk

5

Thus, the question before this Court is what effect, if any, the dormant judgment has on the validity of the lien and its subsequent foreclosure pursuant to OCGA § 44-14-530. This question was addressed by the Court in *Carter-Moss Lumber Co. v. Short*.[7]

In that case, the Carter-Moss Lumber Company sold building materials to Short, who also owned the property at issue, and after Short failed to pay, the lumber company filed a notice of lien in 1921.[8] In October 1922, the lumber company sued Short, seeking the purchase price of the material and to foreclose on their lien.[9] On November 21, 1922, the trial court entered a judgment against Short for the amount claimed and declaring a special lien upon the property owned by Short.[10] The next

---

on the general execution docket, all at such times and periods that seven years will not elapse between such entries of such notices or between such an entry and a proper entry made as prescribed in paragraph (2) of this subsection.

[7] 66 Ga. App. 330 (18 SE2d 61) (1941). For purposes of this appeal, the prior versions of the Dormancy Statute and lien statute at issue in *Carter-Moss* do not materially differ from the current provisions in OCGA § 9-12-60 and OCGA § 44-14-361.1. See *Carter-Moss Lumber Co.*, 66 Ga. App. at 335-336 (dissenting opinion quoting former Code sections 110-1001 and 67-2301).

[8] See *Carter-Moss Lumber Co.*, 66 Ga. App. at 331.

[9] See id.

[10] See id.

6

day, execution was issued on the judgment and placed on the general execution docket of the superior court.[11]

Carter-Moss took no further action to collect until August 1940 when the sheriff levied the execution upon the real estate.[12] Short challenged the levy on her property, asserting that the 1922 judgment upon which it was based was dormant.[13] The superior court agreed with Short, and this Court affirmed.[14] This Court's rationale was based upon the fact that a materialman's lien, which is in derogation of common law, is inchoate and "must be completed, made good, or perfected in accordance with the provisions of" the lien statute.[15] Failure to comply with this process "vitiates the lien, not only as against third persons, but . . . as against the owner himself."[16] In light

---

[11] See id.

[12] See id. at 331-332.

[13] See id. at 331-332. Carter-Moss argued that its lien was exempt from the Dormancy Statute because the judgment "merely declared and established a lien which was already in existence; that such lien was not first established by the judgment but began to exist when the material was furnished to the owner of the property." Id. at 333.

[14] See id. at 332-334.

[15] Id. at 333-334. See OCGA § 44-14-361.1 (a).

[16] *Carter-Moss Lumber Co.*, 66 Ga. App. at 334.

of the prerequisites, a materialman's lien is an interest perfected only by compliance with the statutory requirements, including obtaining a judgment against the original debtor. Therefore, the Court in *Carter-Moss Lumber Co.* held that the 1922 judgment "made good *for the first time* the lien claimed by the materialman, and, accordingly, was within the statute providing that, under the circumstances of this case, such judgment would become dormant after seven years."[17] This is in contrast to liens that do not arise out of judgments but arise by virtue of a contract with the party against whom enforcement is sought, such as a mortgage lien.[18]

Here, similar to *Carter-Moss Lumber Co.*, the lien to be foreclosed on was made good or perfected only after BVL complied with OCGA §44-14-361.1 (a) and obtained a default judgment against Diamond. It was this judgment, and only this judgment, that satisfied BVL's obligation to "obtain a judgment against the contractor

---

[17] (Emphasis supplied.) Id.

[18] See id. at 334. See generally *Collier v. Bank of Tupelo*, 190 Ga. 598, 600 (2) (10 SE2d 62) (1940) ("[A] judgment in rem, entered for the purpose of enforcing a pre-existing lien, is held not to become dormant under the dormancy statutes, which relate only to liens created by the judgment. *Manifestly a lien which the [prior] judgment does not create the dormancy judgment statutes should not take away.*") (emphasis supplied).

8

. . . before [initiating a lien foreclosure] proceeding against the property."[19] It is also undisputed that the judgment against Diamond was rendered dormant and unenforceable by OCGA § 9-12-60 (a). So it follows that under a strict construction of the lien statute,[20] when the default judgment against Diamond became dormant, the lien was no longer valid and there was nothing to foreclose upon.[21] And the dormancy of the underlying judgment renders the lien unenforceable regardless of whether the

---

[19] *Melton*, 241 Ga. at 590.

[20] "It is well settled that laws giving to a creditor a lien upon the property of his debtor, being in derogation of common law, are to be strictly construed against the creditor and liberally in favor of the debtor." *Green v. Farrar Lumber Co.*, 119 Ga. 30, 32-33 (46 SE 62) (1903). And "[t]he General Assembly is presumed to enact all statutes with full knowledge of the existing condition of the law and with reference to it. The meaning and effect of a statute are to be determined in connection, not only with the common law . . . but also with reference to other statutes and decisions of the courts." *Summerlin v. Ga. Pines Community Svc. Bd.*, 286 Ga. 593, 594 (2) (690 SE2d 401) (2010) (citation and punctuation omitted).

[21] We note that the dissent in *Carter-Moss Lumber Co.* took issue with the fact that the materials were provided directly to the property owner, not a contractor, and thus would have held that the lien arose – not from the judgment – but from the contract between the parties and was therefore absolute upon delivery of the material to the owner and survived the dormancy of the judgment. See *Carter-Moss Lumber Co.*, 66 Ga. App. at 343-344. The dissent, however, noted that when materials are delivered to the contractor with whom the owner has a contract, the requirement of a judgment against the contractor is necessary to perfect a lien. It also discussed the holding in *Tupelo*, above, that dormancy judgment statutes have application only to liens created by a judgment. See id. at 342-344.

9

materialman is at the foreclosure stage, as now, or at a later levy proceeding, as in *Carter-Moss Lumber Co.*

2. In light of our holding in Division 1, Lang's remaining enumeration of error is moot.

*Judgment reversed. Andrews, P. J., concurs. Ray, J., concurs in judgment only.*