**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**June 21, 2022**

# In the Court of Appeals of Georgia

A22A0056. ARCO DESIGN/BUILD, LLC v. SAVANNAH GREEN
   I OWNER, LLC.

MARKLE, Judge.

This appeal addresses the discrete issue of whether the tolling provisions of the 2020 Statewide Judicial Emergency Orders extended the deadline for filing an affidavit of nonpayment under Georgia's lien waiver statute, OCGA § 44-14-366.[1] The trial court determined that they did not and, for the reasons that follow, we affirm.

The material facts of this case are not in dispute. In 2018, Savannah Green I Owner, LLC ("SGO") entered into a contract with Arco Design/Build, LLC, under which Arco agreed to design and build a warehouse on SGO's property in Pooler,

---

[1] Unless otherwise noted, all references to OCGA § 44-14-366 are to the version that became effective on March 31, 2009.

Georgia. The contract required Arco to submit periodic applications for payment, and to execute conditional lien waivers to cover the exact amount requested in the payment application. Pursuant to the terms of these waivers, Arco released "any and all liens or claims of lien it has upon the . . . property" upon full payment of the requested amount. Tracking the language of OCGA § 44-14-366 (f) (2), the waivers also provided that Arco "shall be conclusively deemed to have been paid in full" regardless of whether Arco actually received the payment, unless it filed an affidavit of nonpayment or a claim of lien within 60 days of the date of the waiver.

On April 22, 2020, Arco submitted to SGO an application for payment in the amount of $1,027,695.17, and executed the accompanying lien waiver. More than 60 days later, on September 14, 2020, Arco filed an affidavit of nonpayment under OCGA § 44-14-366 in Chatham County Superior Court, claiming that it was still owed $668,912.17 under this application for payment.[2] The following month, Arco recorded a claim of lien for the unpaid amount.

SGO filed suit, bringing a claim for breach of contract based on Arco's allegedly defective work, and sought a declaratory judgment that Arco's affidavit of

---

[2] On that same date, Arco filed an additional affidavit of nonpayment in the amount of $184,264.03, but that claim was not addressed in the trial court's order on appeal.

2

nonpayment was untimely, and therefore any debt SGO owed was extinguished by operation of law. Arco answered and brought counterclaims for breach of contract based on SGO's nonpayment and to foreclose its lien.[3] In its pleadings, Arco asserted that its affidavit of nonpayment was timely because the 60-day deadline under OCGA § 44-14-366 (f) (2) (c) was tolled, and did not begin to run until July 14, 2020, under the Supreme Court of Georgia's Order Declaring Statewide Judicial Emergency, and the subsequent orders extending the judicial emergency. SGO moved for partial summary judgment on this issue, which the trial court granted in a thorough and well-reasoned order. Arco now appeals.

Arco challenges the trial court's determination that its affidavit of nonpayment was untimely because the Emergency Orders did not toll the filing requirements under OCGA § 44-14-366. This appeal requires us to construe the applicable Emergency

---

[3] The Georgia State-wide Business Court granted the parties' joint motion to transfer the case from the superior court. This appeal is the first review of an order of the state business court. We have jurisdiction to consider this appeal pursuant to OCGA §§ 5-6-33 (a) (1) and 15-3-3.1 (a), and under Article VI, Section V, Paragraph III of the Georgia Constitution.

Orders,[4] as well as the Georgia lien waiver statute, and we are bound by the following rules of construction:

> In interpreting any statute, we necessarily begin our analysis with familiar and binding canons of construction. And in considering the meaning of a statute, our charge is to presume that the General Assembly meant what it said and said what it meant. So, we must afford the statutory text its plain and ordinary meaning, consider the text contextually, read the text in its most natural and reasonable way, as an ordinary speaker of the English language would, and seek to avoid a construction that makes some language mere surplusage. Thus, when the language of a statute is plain and susceptible of only one natural and reasonable construction, courts must construe the statute accordingly.

(Citations and punctuation omitted.) Kemron Environmental Servs. v. Prospira Paincare, 362 Ga. App. 727, 730 (870 SE2d 53) (2022). Because statutory interpretation is a question of law, our review is de novo. *Hill v. First Atlantic Bank*, 323 Ga. App. 731, 732 (747 SE2d 892) (2013). And, as lien statutes are in derogation

---

[4] The parties do not dispute that the rules of construction apply to the Emergency Orders as the Chief Justice's authority to issue them is derived from statute. See OCGA § 38-3-60 et seq.; cf. *Schwartz v. Black*, 200 Ga. App. 735, 736 (409 SE2d 681) (1991) (where administrative agency's authority to adopt rules and regulations is derived from statute, rules of statutory interpretation apply to their construction).

of the common law, they "must be strictly construed in favor of the property owner and against the materialman." (Citation and punctuation omitted.) *Bibler Masonry Contractors v. J. T. Turner Constr. Co.*, 340 Ga. App. 490, 493 (798 SE2d 19) (2017).

Under the lien waiver statute, OCGA § 44-14-366:

(1) When a waiver and release provided for in this Code section is executed by the claimant, it shall be binding against the claimant for all purposes, subject only to payment in full of the amount set forth in the waiver and release.

(2) Such amounts shall conclusively be deemed paid in full upon the earliest to occur of:

(A) Actual receipt of funds;

(B) Execution by the claimant of a separate written acknowledgment of payment in full; or

(C) Sixty days after the date of the execution of the waiver and release, unless prior to the expiration of said 60 day period the claimant files a claim of lien or files in the county in which the property is located an affidavit of nonpayment.

OCGA § 44-14-366 (f) (1), (2).

On March 14, 2020, in response to the surging COVID-19 pandemic, Chief Justice Harold D. Melton issued the first of several Emergency Orders, declaring a statewide judicial emergency "affecting all courts and clerk's offices in the State as it relates to all *judicial proceedings*." (Emphasis supplied.) Order Declaring Statewide Judicial Emergency at 1, March 14, 2020. The Chief Justice also issued the following directive:

> Pursuant to OCGA § 38-3-62, during the period of this Order, the undersigned hereby suspends, tolls, extends, and otherwise grants relief *from any deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, whether in civil or criminal cases or administrative matters,* including, but not limited to any: (1) statute of limitation; (2) time within which to issue a warrant; (3) time within which to try a case for which a demand for speedy trial has been filed; (4) time within which to hold a commitment hearing; (5) deadline or other schedule regarding the detention of a juvenile; (6) time within which to return a bill of indictment or an accusation or to bring a matter before a grand jury; (7) time within which to file a writ of habeas corpus; (8) time within which discovery or any aspect thereof is to be completed; (9) time within which to serve a party; (10) time within which to appeal or to seek the right to appeal any order, ruling, or other determination; and (11) such other *legal proceedings* as determined to be necessary by the authorized judicial official.

(Emphasis supplied.) Id. at 2; see also OCGA § 38-3-62 (a).

Under the third extension of the Emergency Order, "many of the deadlines imposed by law on *litigants in civil and criminal cases* that had been suspended, tolled, or extended" were to be reinstated as of July 14, 2020. (Emphasis supplied.) See Third Order Extending Declaration of Statewide Judicial Emergency at 1, 3 (II) (2), June 12, 2020.

Arco thus posits that its September 14, 2020 affidavit of nonpayment was timely because it was filed sixty days from the July 14th reinstatement date.[5] See OCGA § 44-14-366 (f) (2) (C). On appeal, it contends that the trial court incorrectly construed certain provisions of the Emergency Orders, improperly limiting their intended scope. We address each term in turn, and conclude that the trial court correctly held that the Emergency Orders did not toll the filing requirements under OCGA § 44-14-366 (f) (2) (C).

(a) "In civil or criminal cases or administrative matters."

---

[5] Under Arco's proposed schedule, the 60-day deadline ran on Saturday, September 12, 2020. However, the trial court determined that OCGA § 1-3-1 (d) (3) applied to the lien waiver statute. This time computation issue is not raised on appeal, and is irrelevant in light of our decision.

Arco first takes issue with the trial court's interpretation of the above language from the first Emergency Order.[6] Specifically, the trial court noted that the first Emergency Order contained a significant limiter, restricting the tolling provision to "any deadlines or other time schedules or filing requirements imposed by otherwise applicable statutes, rules, regulations, or court orders, *whether in civil or criminal cases or administrative matters*." (Emphasis supplied.) Order Declaring Statewide Judicial Emergency at 2, March 14, 2020. The trial court then found that "[t]he statutory deadline for filing an affidavit of nonpayment or a claim of lien is plainly not a deadline imposed in a civil or criminal case." Arco contends that the phrase, "whether in civil or criminal cases or administrative matters," qualifies only the immediately preceding phrase, "court orders"; thus, the tolling provision applies to OCGA § 44-14-366 (f) (2) (C) as it is simply "an otherwise applicable statute." Order Declaring Statewide Judicial Emergency at 2, March 14, 2020.

The statutory interpretation Arco espouses is the "rule of the last antecedent," under which "a qualifying phrase should ordinarily be read as modifying only the

---

[6] SGO asserts Arco waived many of its appellate arguments regarding the construction of the Emergency Orders because it did not assert identical arguments below. We find no such waiver. See *Camelot Club Condo. Assn. v. Afari-Opoku*, 340 Ga. App. 618, 620 (1), n. 5 (798 SE2d 241) (2017).

noun or phrase that it immediately follows." (Citations and punctuation omitted.) *Cajun Contractors v. Peachtree Property Sub*, 360 Ga. App. 390, 414 (3) (a), n. 16 (861 SE2d 222) (2021); see also *Thornton v. State*, 310 Ga. 460, 467 (3) (851 SE2d 564) (2020). However, as our Supreme Court has explained,

> this rule is not absolute, and the inference it raises may be rebutted where the structure and internal logic of the statutory scheme so militate. Under the alternative "series-qualifier principle," a qualifying phrase appearing at the end of a series should be read to apply to all items in the series when such an application would represent a natural construction. In choosing among the different understandings of the statute proposed by the parties, we must assess the qualifying phrase by reference to its situation within and relationship to the entire . . . text.

(Citations and punctuation omitted.) *Thornton*, 310 Ga. at 467-468 (3).

Looking at the first Emergency Order as a whole, the phrase in question is most naturally and reasonably read to qualify the entire preceding series of terms. See *Thornton*, 310 Ga. at 468 (3); see also Norman Singer, 2A Sutherland Statutory Construction § 47:33 (7th ed. 2021) ("A qualifying phrase separated from antecedents by a comma [as here] is evidence that the qualifier is supposed to apply to all the antecedents instead of only to the immediately preceding one."); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 144-146 (1st ed.

9

2012). In other words, the tolling provision applies to statutes that are "in civil or criminal cases or administrative matters," but not to all statutes containing a deadline, time schedule or filing requirement.[7] To find otherwise would confound reason. Moreover, this construction comports with the textually stated purpose of the March 14, 2020 order, to declare an emergency "as it relates to all *judicial proceedings*." (Emphasis supplied.) Order Declaring Statewide Judicial Emergency at 1, March 14, 2020; see also *Lucas v. Beckman Coulter, Inc.*, 303 Ga. 261, 264, n. 6 (811 SE2d 369) (2018) ("[T]he last antecedent rule applies where no contrary intention appears.") (citation omitted). As discussed below, the filing of an affidavit of nonpayment under OCGA § 44-14-366 (f) (2) (C) is not a judicial proceeding. Thus, the trial court did not err in its interpretation of this phrase.

(b) "Judicial proceedings" and "legal proceedings."[8]

---

[7] Arco argues that, unlike court orders, statutes are not "in" civil or criminal cases. This argument ignores the language of the Emergency Order, which qualifies the phrase "statutes, rules, regulations, or court orders" with the adjective, "applicable." Order Declaring Statewide Judicial Emergency at 2, March 14, 2020. Unquestionably, statutes *are* applicable in civil or criminal cases. See, e.g., *Viskup v. Viskup*, 291 Ga. 103, 107 (3) (727 SE2d 97) (2012) (noting that OCGA § 19-9-3 (g) "is *applicable in* an action seeking modification of child custody/visitation[.]") (emphasis supplied).

[8] Arco also identifies the term, "judicial process," in its claim of error; however, we have already determined that a lien does not become an act of judicial

Arco next contends the trial court misinterpreted the above terms in the Emergency Orders, and in ultimately concluding that the filing requirements imposed by OCGA § 44-14-366 do not amount to a deadline in a "legal proceeding" or a "judicial proceeding." Arco also takes issue with the trial court's observation that the deadline under OCGA § 44-14-366 (f) (2) (C) cannot be in a legal or judicial proceeding because it necessarily expires before a suit to foreclose the lien can commence. We find no error in the trial court's construction of these terms.

Plainly, the filing of an affidavit of nonpayment to nullify a lien waiver in the property records is not a judicial or legal proceeding. A judicial proceeding is "[a]ny court proceeding; any proceeding initiated to procure an order or decree, whether in law or in equity." Judicial Proceeding, Black's Law Dictionary (11th ed. 2019); see also *Harkins v. CA 14th Investors,* 247 Ga. App. 549, 550 (544 SE2d 744) (2001) ("[D]ictionaries may supply the plain and ordinary meaning of a word."). A legal proceeding is "[a]ny proceeding authorized by law and instituted in a court or tribunal to acquire a right or to enforce a remedy." Legal Proceeding, Black's Law Dictionary (11th ed. 2019). A proceeding is generally defined as "[t]he regular and orderly

process until it is "attached to a lawsuit and verified notice of the suit is filed under OCGA § 44–14–361.1," which has not occurred here. (Emphasis omitted.) *Simmons v. Futral*, 262 Ga. App. 838, 847 (586 SE2d 732) (2003).

progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment" or as "[a]ny procedural means for seeking redress from a tribunal or agency." Proceeding, Black's Law Dictionary (11th ed. 2019). Under these definitions, the filing of an affidavit of nonpayment or a claim of lien is not a judicial or legal *proceeding*. Moreover, these terms, as used in the Emergency Orders, would be mere surplusage if every filing with a court clerk's office amounted to a proceeding. See *Stockton v. Shadwick*, 362 Ga. App. 779, 783 (1) (a) (870 SE2d 104) (2022) ("[T]he fundamental rules of statutory construction . . . require us to avoid a construction that makes some language mere surplusage.") (citation and punctuation omitted).

Arco nevertheless contends that the filing of the affidavit of nonpayment is contemplated by these definitions because it cannot bring an action to recover the alleged debt without first filing the affidavit of nonpayment. See *ALA Construction Servs. v. Controlled Access*, 351 Ga. App. 841, 844 (833 SE2d 570) (2019) (analyzing the version of OCGA § 44-14-366 (f) applicable here, and finding that the materialman's action for breach of contract was precluded because its failure to file an affidavit of nonpayment or claim of lien within the 60-day period extinguished the

12

debt).[9] However, the textually stated *purpose* of filing an affidavit of nonpayment or a claim of lien is not to "seek redress from a tribunal," but to establish a debt. See *ALA Construction Servs.*, 351 Ga. App. at 844 (The materialman "had a statutorily imposed responsibility to file either a claim of lien or an affidavit of nonpayment if it wished to *keep the debt alive* beyond 60 days.") (emphasis supplied); see also Lien, Black's Law Dictionary (11th ed. 2019) (defining a lien as "[a] legal right or interest that a creditor has in another's property"). It is thus not a judicial or legal *proceeding*.

We find support for this interpretation in *Simmons v. Futral*, 262 Ga. App. 838, 847 (586 SE2d 732) (2003), a defamation case addressing whether statements made in a surveyor's lien were absolutely privileged. There, we noted that "a lien is not a pleading . . . *until* the lien becomes attached to a lawsuit and *verified* notice of the suit is filed under OCGA § 44-14-361.1. At that point, the lien becomes an act of legal, or judicial, process[.]" (Emphasis in original.) Id. We also cited favorably to a South Dakota Supreme Court opinion that held

---

[9] OCGA § 44-14-366 was later revised to provide that the waiver and release rights "under this Code section shall be limited to waivers and releases of lien and labor or material bond rights *and shall not be deemed to affect any other rights or remedies of the claimant*." (Emphasis supplied.) OCGA § 44-14-366 (a) (January 1, 2021).

13

A materialman's lien may be ancillary to judicial action — the filing is a prerequisite to a lien foreclosure. Still, a lawsuit will not necessarily follow from filing a lien and often does not. . . . We conclude the filing of a materialman's lien is not a judicial proceeding[.]

(Punctuation omitted.) Id. at 846, citing *Gregory's, Inc. v. Haan*, 545 NW2d 488, 494 (II) (1996 SD 35) (1996); see also *Tucker Door & Trim v. Fifteenth St. Co.*, 235 Ga. 727, 728 (221 SE2d 433) (1975) ("It is not until foreclosure of the lien, *after a full judicial proceeding*, that any judgment attaches against the property.") (emphasis supplied). Accordingly, there is no basis to find that the filing of an affidavit of nonpayment under our lien laws is a judicial or legal proceeding.

Arco attempts to equate the pre-litigation filing requirements at issue here to the issuance of a warrant because warrants are often sought prior to a criminal prosecution. This comparison is unpersuasive. First, warrants are expressly included in the first Emergency Order's tolling provision. Order Declaring Statewide Judicial Emergency at 2, March 14, 2020; see also OCGA § 38-3-62 (a) (2). Second, without question, the issuance of a warrant is a judicial proceeding because it requires a judge to find probable cause. See OCGA §§ 17-5-21 (a); 17-4-40 (a); see also Judicial Proceeding, Black's Law Dictionary (11th ed. 2019) (A judicial proceeding is "[a]ny court proceeding; any proceeding initiated to procure an order or decree"). No such

14

authority is required to file an affidavit of nonpayment under OCGA § 44-14-366 (f) (2) (C).

Arco next attempts to equate this filing requirement to ante litem notices that also must be filed before litigation may ensue. See OCGA §§ 50-21-26 (a); 36-33-5 (b). The Emergency Orders do not specifically mention ante litem notices in the tolling provisions, and we do not decide in this appeal whether ante litem notices were tolled under them. Yet, we note some significant distinctions between ante litem notices and the affidavit of nonpayment at issue here. Most telling is their differing results: an ante litem notice preserves a cause of action, whereas an affidavit of nonpayment preserves an interest in property. Compare OCGA §§ 36-33-5 (b) ("No action shall be entertained by the courts against the municipal corporation until the cause of action therein has first been presented to the governing authority for adjustment."); 50-21-26 (a) (3) ("No action against the state under this article shall be commenced and the courts shall have no jurisdiction thereof unless and until a written notice of claim has been timely presented[.]") with *Lang v. Brand-Vaughan Lumber Co*., 339 Ga. App. 710, 714 (1) (792 SE2d 461) (2016) (physical precedent only) ("[A] materialman's lien is an interest perfected only by compliance with the statutory requirements, including obtaining a judgment against the original debtor.");

15

*Simmons*, 262 Ga. App. at 846 ("A materialman's lien may be ancillary to judicial action . . . . Still, a lawsuit will not necessarily follow from filing a lien and often does not.") (citation and punctuation omitted); see also *Tucker Door & Trim Corp.*, 235 Ga. at 729 ("The filing of the claim of lien is similar to a lis pendens notice. It gives notice to subsequent purchasers of the property, or persons who might extend credit thereon, that there is superior charge on it; and gives protection to the materialman until his claim can be foreclosed.").

Moreover, the statutes providing for ante litem notices are procedural laws; whereas the lien waiver statute grants substantive rights to both the property owner and the materialman. See *Burns v. State*, 313 Ga. 368, 372 (3) (870 SE2d 360) (2022) (explaining that a "procedural law is that law which prescribes the methods of enforcement of rights, duties, and obligations," whereas a substantive law creates obligations and grants substantive rights) (citation and punctuation omitted); see also *Henderson v. Dept. of Transp.*, 267 Ga. 90 (2) (475 SE2d 614) (1996) (service and notice requirements under the Tort Claims Act are procedural); see generally OCGA § 44-14-366. Accordingly, we are unpersuaded by this comparison, and conclude that the trial court did not err in finding that the filing requirements under OCGA § 44-4-366 (f) (2) (C) do not amount to a judicial or legal proceeding.

16

(c) "Litigants."

With regard to this term,[10] Arco takes issue, specifically, with the trial court's following finding:

> The Chief Justice's continual reference to the deadlines imposed on litigants in civil and criminal cases and the absence of any discussion, guidance, or reference to other miscellaneous filing or recording deadlines unrelated to judicial proceedings is telling. As reflected in the plain language of the original Emergency Order, and re-emphasized in the subsequent orders extending the same, the Chief Justice clearly intended to limit tolled deadlines to those affecting "litigants" — not all deadlines existing in the entirety of Georgia law.

See, e.g., Third Order Extending Declaration of Statewide Judicial Emergency at 3, June 12, 2020 ("This order announces a plan to reimpose all deadlines and other time schedules and filing requirements . . . that are imposed *on litigants*[.]") (emphasis in original); Fourth Order Extending Declaration of Statewide Judicial Emergency at 3, July 10, 2020 ("[T]his order hereby reimposes all deadlines and other time schedules . . . that are imposed *on litigants*[.]") (emphasis in original).

---

[10] Litigant is generally defined as a "party to a lawsuit; the plaintiff or defendant in a court action, whether an individual, firm, corporation, or other entity." Litigant, Black's Law Dictionary (11th ed. 2019).

Arco contends that the term, "litigant," requires a broader interpretation because the first Emergency Order did not include this term, and it expressly tolled the issuance of warrants, a proceeding that does not involve a "litigant" per se. We are not persuaded.

In Division (b) above, we explained how the administrative or clerical act of filing an affidavit of nonpayment differs significantly from the judicial act of issuing a warrant. Even setting aside this disparity, this claim of error fails because the trial court did not base its analysis on this term alone. Rather, the trial court read all of the relevant Emergency Orders in concert, as it was required to do. See *Lathan v. Hosp. Auth. of Charlton County*, 343 Ga. App. 123, 128 (1) (805 SE2d 450) (2017) ("A statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes 'in pari materia,' are construed together, and harmonized wherever possible[.]") (citation omitted); *Ivey v. McCorkle*, 343 Ga. App. 147, 153 (5) (a) (806 SE2d 231) (2017) (reading various provisions of a city charter in pari materia).

Thus, in language overlooked by Arco, the trial court found that

with respect to the deadlines imposed on litigants (as opposed to the courts generally), the order applies only to deadlines, time schedules,

18

and filing requirements in judicial or legal proceedings related to civil or criminal cases. OCGA § 44-14-366 may be a statutory deadline, but it is not a "legal" deadline imposed on *litigants*, nor is it a deadline in a "legal proceeding" or "judicial proceeding."

(Emphasis in original.)

For the reasons set forth above, we agree with this conclusion. We further note that the trial court's reasoning comports with the precept that our lien laws must be strictly construed in favor of the property owner. See *Bibler Masonry Contractors*, 340 Ga. App. at 493; see also *U. S. Filter Distribution Group v. Barnett*, 273 Ga. 254, 255 (538 SE2d 739) (2000). Accordingly, the trial court correctly determined that the Emergency Orders did not toll the filing requirements of OCGA § 44-14-366,[11] and we affirm.

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur*.

---

[11] Although this outcome may appear draconian as it relates to Arco's claims for payment, we do "not have the authority to rewrite statutes." (Citations and punctuation omitted.) *Harris v. Mahone*, 340 Ga. App. 415, 422 (1) (797 SE2d 688) (2017); see, e.g., OCGA § 44-14-366 (a) (January 1, 2021).